## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| HOGER A. DIZAYEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number:  1:07CV2053(HHK) |
| | ) | |
| MICHAEL CHERTOFF, Secretary, United States | ) | |
| Department of Homeland Security,  et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____ )

### MOTION TO DISMISS

Defendants Emilio T. Gonzalez, et al., through undersigned counsel, hereby move for

dismissal of the complaint pursuant to Rule 12(b)(1) for lack of jurisdiction.  A proposed order

and memorandum of points and authorities are attached hereto.

Dated: March 6, 2008                           Respectfully submitted,

                                               _____/s/_____
                                               JEFFREY A. TAYLOR, DC BAR # 498610
                                               United States Attorney


                                               _____/s/_____
                                               RUDOLPH CONTRERAS, DC BAR #434122
                                               Assistant United States Attorney


                                               _____/s/_____
                                               ROBIN M. MERIWEATHER, DC BAR # 490114
                                               Special Assistant United States Attorney
                                               555 Fourth St., N.W.
                                               Washington, DC  20530
                                               Phone: (202) 514-7198 Fax: (202) 514-8780
                                               Robin.Meriweather2@usdoj.gov

                                               **OF COUNSEL:**

                                               Elizabeth Posont
                                               CIS NEBRASKA SERVICE CENTER COUNSEL

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| HOGER A. DIZAYEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number:  1:07CV2053(HHK) |
| | ) | |
| MICHAEL CHERTOFF, Secretary, United States | ) | |
| Department of Homeland Security,  et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION AND SUMMARY**

Congress has expressly withdrawn federal court jurisdiction over United States

Citizenship and Immigration Services's ("USCIS") discretionary actions and decisions

pertaining to petitions for immigration benefits.  Nonetheless, Plaintiff, Hoger A. Dizayee, asks

this Court to order Defendants to complete the adjudication of his Form I-485 "adjustment of

status" application for lawful permanent resident status.  USCIS has not completed its

adjudication of Plaintiff's I-485 application because it is evaluating whether Plaintiff's

membership in and/or support of the Iraqi National Congress would render him inadmissible.

Thus, this is not a case in which USCIS has refused to process Plaintiff's application, but rather,

one in which the adjudication is active but is proceeding less quickly than Plaintiff wishes. The

pace at which USCIS completes its evaluation of Plaintiff's eligibility for adjustment of status is

discretionary, just as other aspects of the adjudication are.  It follows that the Court lacks

jurisdiction to intervene in the adjudication process, and Plaintiff's complaint should be

dismissed.

Plaintiff's claims against the FBI must be dismissed for lack of standing. Although the prayer for relief does not specify the relief sought against the FBI (as opposed to Defendants more broadly), Plaintiff appears to allege that the FBI has not completed its background checks, and thereby delayed USCIS's adjudication of Plaintiff's adjustment application. See Compl. ¶ 9. However, the FBI completed its background checks before the complaint was filed. Accordingly, there is no live controversy between Plaintiff and the FBI, and the claims against the FBI must be dismissed for lack of jurisdiction.

## BACKGROUND

**A.    Statutory and Regulatory Background**

   1. <u>Adjustment of Status and Admissibility Requirements</u>

An alien who has been granted asylum and has been physically present in the United States for at least one year after being granted asylum may file an asylum-based adjustment of status application, which USCIS has discretion to grant if the alien meets all eligibility criteria. Specifically, the Immigration and Nationality Act permits the Secretary of Homeland Security and the Attorney General "in [their] discretion and under such regulations as [they ]may prescribe," to adjust the status of an alien admitted as an asylee to that of " an alien lawfully admitted for permanent residence." 8 U.S.C. § 1159(b). Aliens that seek such adjustments of status file applications referred to as an "I-485." The procedures for asylees to apply for adjustment of status are set forth at 8 C.F.R. § 209.2.

At the time Plaintiff filed his adjustment application, aliens who sought adjustment of status based upon their status as asylees were subject to a Congressionally mandated cap which allowed only 10,000 asylees to have their status adjusted each year. See Declaration of F.

Gerard Heinauer, ¶ 4 (Exh. 1) ("Heinauer Decl."); Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005). That annual cap created a backlog of asylees seeking permanent residency, and the applications were adjudicated in the order in which they were filed. See Heineauer Decl., ¶ 4. As a result of that backlog and the annual cap, asylees who filed adjustment applications in March 2003 had a waiting period of approximately 10 years. See id. The numerical cap was lifted in May 2005. See id. ¶ 5.

An asylee seeking adjustment of status must show that (s)he is not inadmissible to the United States under any statutory ground of inadmissibility set forth at section 212(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a), including health-related, criminal, terrorist, and other grounds. See 8 U.S.C. § 1159(b)(5). The alien bears at all times the burden of persuading the Attorney General to exercise his discretion in the alien's favor. See Randall v. Meese, 854 F.2d 472, 474 (D.C. Cir. 1988); Jain v. Immigration and Naturalization Service, 612 F.2d 683, 687 (2d Cir. 1979); see generally Elkins v. Moreno, 435 U.S. 647, 667 (1978) (noting "adjustment of status is a matter of grace, not right"). Neither the statute nor the regulations establish a mandatory time frame in which adjudication must be completed.

Aliens who have engaged in terrorist activities, and/or are representatives or members of terrorist organizations, are not eligible for admission as permanent residents of the United States. See 8 U.S.C. § 1182(a)(3)(B)(i). USCIS cannot waive that statutory limitation on asylees' admissibility. See id. § 1159(d) (prohibiting waiver of § 1182(a)(3)(A), (B), (C), & (E)). A terrorist organization is an organization designated as such under 8 U.S.C. § 1189, or an undesignated group of two or more individuals which engages in activities that meet the statutory definition of "terrorist activities." Id. § 1182(a)(3)(B)(vi). "Terrorist activities" include

highjackings, the seizure and detention of hostages, assassinations, and the use of explosives or

other weapons with an intent to endanger the safety of one or more individuals. Id.

§ 1182(a)(3)(B)(iii). The INA defines "engaging in terrorist activity" to include "commit[ing] an

act that the actor knows, or reasonably should know, affords material support, including . . .

funds, transfer of funds, or other material financial benefit." Id. § 1182(a)(3)(B)(iv)(VI).

2.    Judicial Review of Immigration-Related Decisions

In 1996, Congress passed legislation to reduce, and in some cases eliminate, judicial

review of certain immigration-related decisions made by the former Immigration and

Naturalization Service ("INS"). See Sec. 306, Illegal Immigration Reform and Immigration

Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110 Stat. 3009 (September 30, 1996). In

particular, 8 U.S.C. § 1252(a)(2)(B)(ii) divests courts of jurisdiction to review any "decision or

action of the Attorney General the authority for which is specified … to be in the discretion of

the Attorney General, other than the granting of [asylum]."

Because some courts, contrary to Congress' desires, found that this jurisdiction-stripping

bar applied only to discretionary decisions made during removal (deportation) proceedings, on

May 11, 2005, Congress amended Section 1252(a)(2)(B)(ii) to clarify that its proscription against

judicial review applies regardless of whether the discretionary judgment, decision or action is

made in removal proceedings. See Section 101(f), Real ID Act of 2005, Pub. L. 109-13, Div. B,

119 Stat. 231; see also House Conference Report 109-72 at 170 (May 3, 2005). The REAL ID

Act also added references to the Secretary of Homeland Security consistent with the

reorganization of INS (under the Attorney General and U.S. Department of Justice) into USCIS

4

(under the Department of Homeland Security).  Id.  After passage of the Real ID Act, the statute

reads as follows:

> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(I), 1229b, 1229c, or 1255 of this title, or
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. 1252(a)(2)(B).

## B.    Plaintiff's Application

Plaintiff Hoger A. Dizayee, is a native of Iraq, and is present in the United States as an

asylee.  See Compl. ¶ 6.  Plaintiff filed a Form I-485 application to register permanent residence

or adjust status on March 24, 2003.  See Compl. ¶ 2, 10; Heinauer Decl. ¶ 3.  That application

was filed with USCIS's Nebraska Service Center, and remains pending at that Service Center.

Compl. ¶¶ 10, 25; Heinauer Decl. ¶ 3.  Prior to May 2005, Plaintiff's application was subject to

the annual cap on asylee-based adjustments of status, and Plaintiff was projected to be eligible

for adjustment in 2013.  See Heinauer Decl. ¶ 4.

USCIS is actively adjudicating Plaintiff's application, and has taken several steps to

assess Plaintiff's eligibility for adjustment of status.  USCIS submitted fingerprint checks to the

FBI on August 15, 2003 and February 15, 2007.  See id. ¶ 8.  USCIS electronically submitted a

name check request to the FBI on March 27, 2003, and the FBI completed that name check on

April 3, 2003.  See id. ¶ 10.  USCIS also has performed preliminary checks against the DHS-

5

managed Interagency Border Inspection System (IBIS), which contains records and watch list information from over twenty federal law enforcement and intelligence agencies.  See id. ¶ 7. USCIS issued a request for evidence December 4, 2007, requesting details of Plaintiff's history and activities with the Iraqi National Congress.  See id. ¶ 13.  USCIS received Plaintiff's response to that request for evidence on January 2, 2008, and is reviewing the information Plaintiff submitted.  See id.

Plaintiff initiated this action with a mandamus complaint filed on November 14, 2007. Plaintiff asks the Court to compel Defendants to complete the adjudication of his adjustment of status application without further delay.  Compl., ¶¶ 43, 53, 54.

## STANDARD OF REVIEW

Defendants move for dismissal under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to review Plaintiff's claim.  See Fed. R. Civ. P. 12(b)(1).  When reviewing a 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v. Capitol Police Bd., 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003).  In addition, plaintiffs bear the burden of persuasion, and must establish subject-matter jurisdiction "by a preponderance of the evidence."  Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.  To determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence.  See Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Rann, 154 F. Supp. at 64.

## ARGUMENT

I.    **THE COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW PLAINTIFF'S CLAIMS AGAINST THE USCIS DEFENDANTS.**

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); see also Shaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003) (noting that district courts "have only such jurisdiction as the Constitution and the Congress grant them").  The statutes cited in the complaint do not establish a statutory basis for the Court to exercise jurisdiction over this case.  The Court lacks jurisdiction to review Plaintiff's challenge to USCIS's processing of his I-485 application because Section 1252 of the INA precludes judicial review of USCIS's discretionary decisions and actions involving immigration-related applications and proceedings.  8 U.S.C. § 1252(a)(2)(B).  That provision applies "notwithstanding any other provision of law," thereby trumping any alternative source of jurisdiction.  Id.  USCIS has broad discretion to determine the pace and manner of adjudicating adjustment of status applications.  Accordingly, there would be no Administrative Procedures Act ("APA") or mandamus jurisdiction over Plaintiff's challenge to that process even if the INA did not preempt other sources of jurisdiction.

**A.  8 U.S.C. § 1252(a)(2)(B)(ii) Divests This Court of Jurisdiction Over Plaintiff's Challenge to USCIS's Adjudication of His Application.**

Section 1252(a) of the INA expressly precludes judicial review of adjustment of status applications and other discretionary decisions.  As noted <u>supra</u>, Section 1252(a)(2)(B), provides that "no court shall have jurisdiction to review:"

> (i)     any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> (ii)    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be <u>in the discretion of the Attorney General or the Secretary of Homeland Security,</u> . . . .

8 U.S.C. § 1252(a)(2)(B) (emphasis added).   In seeking to compel USCIS to complete its adjudication of his asylum-based adjustment of status application under 8 U.S.C. § 1159, Plaintiff's claims fall squarely within the plain meaning of Section 1252(a)(2)(B)(ii).

Section 1252(a)(2)(B)(ii) divests this Court of subject matter jurisdiction over Plaintiff's claim because the adjudication of an adjustment of status application is a discretionary action and decision.  "[T]his subchapter" refers to Subchapter II of Chapter 12 of Title 8 of the U.S. Code, which is composed of 8 U.S.C. §§ 1151 through 1378.  Section 1159(b), which grants the Secretary of the Department of Homeland Security and the Attorney General discretionary authority to adjudicate adjustment of status applications, is thus part of Subchapter II.  The "authority" for adjudicating asylum-based adjustment of status applications is a decision expressly committed to "the Secretary's or the Attorney General's discretion," pursuant to Section 1159.  <u>See</u> 8 U.S.C. § 1159(b) (providing that the Secretary or Attorney General *may* adjust an asylee's status in their discretion "and under such regulations as [they] may

prescribe.").  The statute provides no mandatory time frame for the adjudication of I-485 applications, and gives the Attorney General complete discretion to prescribe any appropriate regulations.  See id.  Defendants' discretion over the process of adjudicating an I-485 necessarily extends to the assessment of when, whether, and how to grant that application.

Plaintiff is seeking judicial review of both an agency decision and agency action.  USCIS has, at this time, made a *decision* that it needs additional time to review the information submitted in response to the Request for Evidence, and to determine whether Dizayee's membership in and/or support of the Iraqi National Congress is "terrorist activity" which would make Dizayee inadmissible.  Plaintiff's application remains pending as a result of that decision.

This case also involves agency *action*.  The word "action" is not limited to a single act. Its plain meaning also includes an ongoing process or "a series of acts."  Orlov v. Howard, 523 F. Supp. 2d 30, 37 (D.D.C. 2007) (citing Black's Law Dictionary 28 (6th ed. 1990) defining action as "[c]onduct; behavior; something done; the condition of acting; an act or series of acts.");  Safadi v. Howard, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006) (same); Wang v. Chertoff, 2007 WL 4139747, at *4 (N.D. Ga. Oct. 30, 2007) (same); see also Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (finding initiation of background checks was action).  As explained in the Heinauer declaration, USCIS is engaged in the continuing "action" of adjudicating Dizayee's adjustment application.  USCIS is currently assessing how Dizayee's membership in and/or support of the Iraqi National Congress affects his eligibility for permanent residency under the REAL ID Act.  See Heinauer Decl. ¶ 11.  USCIS has also issued a request for evidence ("RFE") pertaining to the eligibility issues, and is reviewing the materials submitted in response to that RFE.  See id. ¶ 13.

Thus this is not a case in which an agency has refused to act.  Instead, the alleged delay is a direct consequence of USCIS's ongoing investigative and evaluative activities to determine Plaintiff's eligibility for permanent residency.  That ongoing assessment is an unreviewable discretionary action.  See Orlov, 523 F. Supp. 2d at 37; Wang, 2007 WL 4139475, at *5; Zhang v. Chertoff, 491 F. Supp. 2d 590, 594 (W.D. Va. 2007) ("the preclusion of judicial review over a discretionary act of USCIS encompasses . . . the pace of this process"); see generally Sayyadinejad v. Chertoff, 2007 WL 4410356, at *5 (S.D. Cal. Dec. 14, 2007) (concluding delays in adjudicating I485 were attributable to the time needed to resolve law enforcement and security concerns and thus did not support mandamus jurisdiction); Li v. Chertoff, 482 F. Supp. 2d 1172, 1177-78 (S.D. Cal. 2007).

That statutory language has led numerous courts to conclude that Section 1252(a)(2)(B)(ii) bars judicial review of claims challenging the pace of the I-485 adjudicative process.  See, e.g., Luo v. Keisler, 521 F. Supp. 2d 72 (D.D.C. 2007) (discussing Section 1252(a)(2)(B) and granting motion to dismiss action to compel adjudication of plaintiffs' I-485s); Orlov, 523 F.Supp.2d at 36 ("Therefore, because the adjustment process, including the pace of processing applications, falls within the discretion of USCIS, and because the pace of processing applications, including completing security checks, constitutes an "action" under the plain meaning of the word, judicial review of plaintiff's claim is precluded by § 1252(a)(2)(B)(ii)."); Sun v. Gonzales, 1:07-cv-00504 (JDB), Order, December 10, 2007 (Pacer Dkt. 12) at 3 ("Because 8 U.S.C. § 1252(a)(2)(B)(ii) divests federal courts of jurisdiction to review a discretionary decision or action of USCIS, and an 'action' includes any discretionary act or series of acts within the adjustment of status process (including the pace of completing various security

checks), this Court lacks jurisdiction over plaintiff's petition.") (Exh. 2); Grinberg, 478 F. Supp.

2d at 1352 (discussing Section 1252(a)(2)(B) and granting motion to dismiss); Safadi, 466 F.

Supp. 2d at 700-01 (same); Dinsey v. Department of Homeland Security, No. 03-10081, 2004

WL 1698630, at * 4 (S.D.N.Y. 2004) (finding no jurisdiction over action to compel USCIS to

adjudicate adjustment of status application and referencing prior precedent holding same); see

generally Zhu v. Gonzales, 411 F.3d 292, 294-96 (D.C. Cir. 2005) (concluding 1252(a) precludes

judicial review of Attorney General's discretionary decision to require party to obtain labor

certification prior to obtaining a work visa); Mahaveer, Inc. v. Bushey, No. 04-1275, 2006 WL

1716723, at *3-*4 (D.D.C. June 19, 2006) (concluding 1252(a) bars review of discretionary

denial of visa).

　　　　Defendants recognize that federal district courts are split on this issue, and that some

judges have concluded that they have jurisdiction to review the reasonableness of any delays in

completing adjudication of an I-485 petition. Compare, e.g., Liu v. Novak, No. 07-263, 509 F.

Supp. 2d 1 (D.D.C. 2007) (exercising jurisdiction over claim alleging unreasonable delay in

resolving adjustment of status application); Alsharqawi v. Gonzales, No. 06-1165, 2007 WL

1346667 (N.D. Tex. Mar. 14, 2007) (same) with Luo, 521 F. Supp. 2d at 72 (dismissing claim

alleging unreasonable delay in resolving adjustment of status application for lack of jurisdiction);

Orlov, 523 F.Supp.2d at 36 ("judicial review of plaintiff's claim of delay in the adjustment

process is precluded by § 1252(a)(2)(B)(ii)"); Sun, 1:07-cv-00504 (JDB), Order, December 10,

2007 (Pacer Dkt. 12) at 3 ("this Court lacks jurisdiction to review the ongoing pace at which

plaintiff's application [Form I-485] is being adjudicated."); Elzer v. Mueller, No. 07-01666, 2007

WL 1221195 (E.D. Pa. Apr. 23, 2007) (dismissing challenge for lack or jurisdiction); Grinberg,

478 F. Supp. 2d at 1352 (same).  However, the majority of judges in this District that have reviewed the issue have concluded that they lack subject matter jurisdiction, and the D.C. Circuit has not yet addressed the issue.  As District Judges Bates and Leon have held, the INA's jurisdiction-stripping provisions are best read as precluding judicial review of Plaintiff's claims concerning his adjustment of status application. "[T]he determination that § 1252(a)(2)(B)(ii) precludes judicial review over plaintiff's claim is further supported by the general rule that courts should refrain from interfering with matters of immigration and national security." Orlov, 523 F.Supp.2d at 36; see also Reno v. Flores, 507 U.S. 292 (1993) (judicial review in immigration matters is narrowly circumscribed); United States v. Valenzuela-Bernal, 458 U.S. 858, 864 (1982) (explaining that control over immigration is largely entrusted to the political branches of the government); Mathews v. Diaz, 426 U.S. 67, 81 (1976) (same).

> **B.     No Other Statute Gives the Court Jurisdiction to Review Plaintiff's Challenge to the Pace of the Adjudication of His I-485 Application.**

Even if some other statute conferred jurisdiction to review Plaintiff's request for immediate adjudication of his application, the INA would foreclose the exercise of that jurisdiction.  By its express terms, the INA applies "notwithstanding any other provision of law (statutory or nonstatutory)." 8 U.S.C. § 1252(a)(2)(B); see Luo, 521 F. Supp. 2d at 74 n. 4 (citing INA and noting that it specifically precludes judicial review "notwithstanding any other provision of law"); Danilov v. Aguirre, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005) (Ellis, J.) ("[I]t is well settled that general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction."). That INA provision expressly identifies the mandamus statute — 28 U.S.C. § 1361 —  as one of the "other provision[s] of law" that cannot confer jurisdiction.  See 8 U.S.C § 1252(a)(2)(B).

In any event, there would be no alternative source of jurisdiction in this case even if the INA did not clearly proscribe judicial review. The Mandamus Act does not apply because the process of adjudicating Plaintiff's application involves discretionary actions and decisions. The Administrative Procedure Act is inapplicable for similar reasons.

1.    The Mandamus Act Does Not Confer Jurisdiction Because the Adjudication of Plaintiff's Application Is A Discretionary Process.

The Mandamus Act would not confer subject matter jurisdiction even if the jurisdiction-stripping provisions of INA § 242 did not apply. That statute gives district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." Cheney v. United States District Court, 542 U.S. 367, 380 (2004) (internal quotations and citation omitted); accord Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). District courts may issue a writ of mandamus only if three elements are met: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005); see also Heckler v. Ringer, 466 U.S. 602, 616 (1984) (noting that defendant must owe plaintiff "a clear nondiscretionary duty" and that all other remedies must be exhausted). Even when those factors are present, "a court may grant relief only when it finds 'compelling equitable grounds.'" In re Medicare Reimbursement Litigation, 414 F.3d at 10. The Court's decision whether or not to exercise mandamus jurisdiction is discretionary. Public Citizen v. Kantor, 864 F. Supp. 208 (D.D.C.1994).

Here, Plaintiff lacks a clear right to immediate adjudication, and Defendants have no clear mandatory or ministerial obligation to complete the adjudication of his application within a particular time frame.  See Luo, 521 F. Supp. 2d at 74 n.4; Orlov, 2007 WL 4293490 at 37; Sun, 1:07-cv-00504 (JDB) at 4; Wang, 2008 WL 4139475, at * 7; Safadi v. Howard, 466 F.Supp.2d at 700; Grinberg, 478 F. Supp. 2d at 1354.  The decision whether to grant or deny Plaintiff's adjustment application is plainly discretionary by statute.  See 8 U.S.C. § 1159(b).  USCIS also "has the discretion to complete all appropriate investigations before making a discretionary determination of whether to grant or deny relief to plaintiff."  Orlov, 523 F. Supp. 2d at 38.  In this case, that discretion permits USCIS to thoroughly investigate Plaintiff's eligibility for permanent residency and to complete its review of the additional evidence recently submitted by Plaintiff.

Plaintiff contends that USCIS has a non-discretionary duty to take some action on adjustment applications.  Compl. ¶ 38.  However, USCIS has taken several steps to adjudicate the application, and is actively reviewing evidence and information pertinent to Plaintiff's eligibility for the benefit.  See Heinauer Decl. ¶¶ 8-11, 13.  Thus, assuming arguendo that USCIS has a clear obligation to adjudicate or act on I-485 applications, the Nebraska Service Center's ongoing active adjudication of the application would satisfy that duty.  See Wang, 2007 WL 4139475, at *8 (concluding that Defendants' ongoing adjudication of I-485 application fulfilled any duty they had to adjudicate applications); Sayyadenijad, 2007 WL 4410356, at *5 (finding evidence that Defendants were adjudicating application foreclosed mandamus jurisdiction).

There are no statutory provisions or regulations that mandate the adjudication of adjustment applications within a particular time frame.  See Orlov, 523 F. Supp. 2d at 38 (noting

14

lack of mandatory deadline); <u>Zheng v. Reno</u>, 166 F. Supp.2d 875, 879 (S.D.N.Y. 2001) ("[T]here

is no requirement that the application be decided within a specific period of time[.]"); <u>Wang</u>,

2007 WL 4139475, at *7 ("Section 245 conspicuously lacks binding or even suggested

timeframes for agency adjudication").  Plaintiff cites language in which Congress stated a

general goal that immigration applications be completed within 180 days.  <u>See</u> Compl. ¶ 31.  The

language Plaintiff cites expresses only "the sense of Congress."  8 U.S.C. § 1571(b).  That

language is precatory, and does not impose a deadline on Defendants.  <u>See</u> <u>Wright v. City of</u>

<u>Roanoke Redevelopment and Housing</u>, 479 U.S. 418, 432 (1987) (statute phrased in precatory

terms does not create a substantive right); <u>Orkin v. Taylor</u>, 487 F.3d 734, 739 (9th Cir. 2007)

("'Sense of Congress' provisions are precatory provisions, which do not in themselves create

enforceable rights, or, for that matter, any enforceable law").  When Congress intended to set

specific time limits upon Defendants' adjudication of an immigration application, it enacted

specific language doing so.  <u>See</u> 8 U.S.C. § 1158(d)(5)(A)(iii) (requiring that asylum applications

be adjudicated within 180 days after they are filed absent "exceptional circumstances").  Notably,

the INA establishes no such firm deadline for the adjudication of an adjustment of status

application.

Consequently, USCIS has no clear, mandatory duty to finish adjudicating Plaintiff's

application prior to completion of its review of the evidence pertaining to his membership in the

Iraqi National Congress, or by a prescribed deadline.  Those factors have led numerous district

courts to find that mandamus relief is unavailable in similar cases.  <u>See, e.g.</u>, <u>Orlov</u>, 523

F.Supp.2d at 37; <u>Sun</u>, 1:07-cv-00504 (JDB) at 4; <u>Wang</u>, 2007 WL 4139475, at *7-*8;  <u>Li</u>, 482 F.

Supp. 2d at 1177; <u>Grinberg</u>, 478 F. Supp.2d at 1354; <u>Safadi</u>, 466 F. Supp.2d 700; <u>Saleh v.</u>

Ridge, 367 F. Supp.2d 508, 511 (S.D.N.Y. 2005); Karan v. McElroy, No. 02 Civ. 6678 (JGK),

2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003); Zheng, 166 F. Supp. 2d at 880-81;

Sadowski v. INS, 107 F.Supp.2d 451, 453 (S.D.N.Y. 2000).  This Court should do the same.

2.    The Administrative Procedures Act Does Not Permit This Court to
Review Plaintiff's Challenge to USCIS's Processing of His Application.

Plaintiff also has no right to judicial review under the APA.  Although the APA is not an

independent source of subject matter jurisdiction, it operates in tandem with federal question

jurisdiction under 28 U.S.C. § 1331 to permit courts to review challenges to certain agency

actions.  See Califano v. Sanders, 430 U.S. 99, 107 (1977); Grinberg, 478 F. Supp. 2d at 1355;

Galluci v. Chao, 374 F. Supp. 2d 121, 128 (D.D.C. 2005).  An agency's alleged failure to act is

"sometimes remediable under the APA, but not always."  Norton v. So. Utah Wilderness

Alliance, 542 U.S. 51, 55 (2004).  The APA expressly precludes judicial review of agency

actions that are "committed to agency discretion by law," or if another statute "preclude[s]

judicial review."  5 U.S.C. § 701(a)(2); Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986).

Moreover, Section 706(1) claims for 'unreasonable delay' are subject to the same limitations as

mandamus claims, i.e., they "can proceed only where a plaintiff asserts that an agency failed to

take a discrete agency action that it is required to take."  Norton, 542 U.S. at 64.  Those

limitations upon the scope of APA review prevent Plaintiff from using the APA as a means of

challenging USCIS's processing of his adjustment of status application.

First, as discussed supra, the INA bars judicial review of challenges to the adjustment of

status adjudication process.  Accordingly, Section 701(a) of the APA, which "withdraws [an

APA] cause of action" to the extent another statute "precludes judicial review," prevents Plaintiff

16

from raising an APA challenge concerning the adjudication of his adjustment of status application.  See  Block v. Community Nutrition Inst., 467 U.S. 340, 345 (1984); 5 U.S.C. § 701(a); Beyond Pesticides v. Whitman, 360 F. Supp. 2d 69, 71 (D.D.C. 2004); see generally Bruno v. Albright, 197 F.3d 1153, 1161-62 (D.C. Cir. 1999) (concluding that "the immigration laws preclude judicial review of consular visa decisions" and therefore bar APA challenges to a visa decision).  Section 702 forecloses judicial review of Plaintiff's challenge to the adjudication of his application for the same reason, as it provides that "nothing herein affects other limitations on judicial review . . . or confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.

Second, Plaintiff has no viable APA claim because this is not a case in which USCIS has "failed to take a discrete agency action that it is required to take."  Norton, 542 U.S. at 64.  Given that USCIS is actively adjudicating Plaintiff's adjustment application, to establish jurisdiction under Section 706(1), Plaintiff would have to demonstrate that USCIS has a non-discretionary duty to complete the adjudication within a specific period of time.  USCIS has no such duty, for the reasons discussed supra.  See Part I.B.1, supra.

Finally, the APA bars judicial review of all of Plaintiff's claims because the USCIS actions Plaintiff has challenged are discretionary.  The APA generally permits challenges to "agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); see also 5 U.S.C. § 555(b) (indicating that agencies should conclude matters "within a reasonable time").  However, such claims are unreviewable by the courts if the relevant agency action is "committed to agency discretion by law."  Id. § 701(a)(2); see also Orlov, 523 F.Supp.2d at 37.  "The principal purpose of the APA limitations . . . and of the traditional limitations upon mandamus

from which they were derived-is to protect agencies from undue judicial interference with their

lawful discretion . . . ."  Norton, 542 U.S. at 66 (2004).

   USCIS's ongoing assessment of Plaintiff's eligibility for permanent residency, and the

pace at which that assessment proceeds, is expressly committed to agency discretion, as are all

other aspects of the adjudication.  As noted supra, Section 1159(b) permits Defendants to adjust

an alien's status in their "discretion" and "under such regulations as [they] may prescribe."  8

U.S.C. § 1159(b) (emphasis added).  That is the type of "plenary" grant of discretion which

renders agency actions unreviewable under the APA.  Secretary of Labor v. Twentymile Coal

Co., 456 F.3d 151, 157 (D.C. Cir. 2006).  The fact that the adjudicatory process is committed to

agency discretion by law bars Plaintiff's APA claim.  See Luo, 521 F. Supp. 2d at 74 n.4; Orlov,

523 F.Supp.2d at 37; Sun, 1:07-cv-00504 (JDB) at 4; Safadi, 466 F.Supp.2d at 700; Zheng, 166

F.Supp.2d at 878 89; Karan, 2003 WL 21209769, at *1 ("[B]ecause decisions regarding the

plaintiff's immigration status are committed to the discretion of the INS, this Court lacks the

authority under . . . the APA to grant the relief the plaintiff seeks."); see also Rahman v.

McElroy, 884 F. Supp. 782, 787-88 (S.D.N.Y. 1995).  In addition, at least two Supreme Court

cases suggest that the presence of a specified time period triggers courts' ability to compel

agency action that is "unreasonably delayed" under § 706(1).  See Norton, 542 U.S. at 65 ("Thus,

when an agency is compelled by law to act within a certain time period . . . a court can compel

the agency to act . . . ."); Brock, 476 U.S. at 260 n.7 (finding that because "the statutory

command that the Secretary 'shall' act within 120 days does not commit such action to the

Secretary's discretion, . . . [t]he court would have the authority to 'compel agency action

unlawfully withheld or unreasonably delayed,' § 706(1)").

## II. THERE IS NO LIVE CONTROVERSY BETWEEN PLAINTIFF AND THE FBI AND THE CLAIMS AGAINST THE FBI MUST BE DISMISSED FOR LACK OF JURISDICTION.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 37 (1976) (citing Flast v. Cohen, 392 U.S. 83, 95 (1968)); see U.S. Const. Art. III, § 2 (authorizing federal courts to review "cases" or "controversies"); Allen v. Wright, 468 U.S. 737, 750 (1984) (discussing case or controversy requirement); National Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997) (same). This requirement prevents the issuance of advisory opinions, as it demands the existence of an actual dispute between adverse parties with a stake in the outcome. See Richardson v. Ramirez, 418 U.S. 24, 36 (1974). The doctrines of standing, mootness, and ripeness all implement Article III's case-or-controversy requirement. See Spirit of Sage Council v. Norton, 411 F.3d 225, 230 (D.C. Cir. 2005).

Standing is a critical component of the case-or-controversy requirement, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), and "is assessed at the time the action commences." Advanced Management Tech. v. FAA, 211 F.3d 633, 635-36 (D.C. Cir. 2000). Plaintiff bears the burden of demonstrating that he had standing at the time the complaint was filed. See id. at 561. To carry that burden, plaintiff must show that three elements are present:

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

19

Lujan, 504 U.S. at 560-61 (internal quotation marks and citations omitted). "In actions for injunctive relief, harm in the past. . . is not enough to establish . . . an injury in fact." American Society for Prevention of Cruelty to Animals v. Ringling Bros., 317 F.3d 334, 336 (D.C. Cir. 2003); see also Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 108 (1998) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.").

Plaintiff appears to have named FBI Director Mueller as a Defendant based upon the mistaken belief that the FBI had not completed its name check and fingerprint checks of Plaintiff, and that those background check results posed a barrier to the adjudication of Plaintiff's I-485. See Compl. ¶ 9. Plaintiff lacks standing to bring such a claim because the FBI completed the tasks it performs in connection with USCIS's adjudication of an I-485 prior to the filing of this complaint. The FBI completed the name check April 3, 2003, and forwarded the results thereof to USCIS.[1] See Heinauer Decl. ¶ 10. Plaintiff was fingerprinted August 15, 2003 and February 15, 2007. See id. ¶ 8. Thus, at the time the complaint was filed, Plaintiff had no injury in fact based on the FBI's processing of his background checks. To the extent Plaintiff contends that the FBI should have completed the background checks earlier than it did, that would be a past injury, which cannot be used to establish standing to raise claims for prospective relief. See Jaramillo v. FCC, 162 F.3d 675, 677 (D.C. Cir. 1998) ("past injury is not enough to support the standing of a party who doesn't seek damages or similar compensation for that injury"). Given that the complaint seeks only prospective relief against Defendants, Plaintiff clearly lacks standing to sue the FBI. Director Mueller must therefore be dismissed from this action.

---

[1] If the FBI had completed the background checks after the complaint was filed, the issue would be analyzed under the doctrine of mootness. See Advanced Mgmt. Tech. v. FAA, 211 F.3d 633, 635-36 (D.C. Cir. 2000) (explaining that the timing of a Defendant's actions will determine whether the lack of a live controversy presents a standing or a mootness problem).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court GRANT

Defendants' motion to dismiss.

Dated:  March 6, 2008                     Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, DC BAR # 490114
Special Assistant United States Attorney
555 Fourth St., N.W.
Washington, DC  20530
Phone: (202) 514-7198 Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

21

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

HOGER A. DIZAYEE,                              )
                                               )
                  Plaintiff,                   )
                                               )
          v.                                   )   Case Number:  1:07CV2053(HHK)
                                               )
MICHAEL CHERTOFF, Secretary, United States     )
Department of Homeland Security,  et al.,       )
                                               )
                  Defendants.                  )
                                               )
_____)

**ORDER**

      Upon consideration of Defendants' Motion to Dismiss, it is this _____

day of _____, 2008,

      ORDERED that the Motion to Dismiss be and hereby is GRANTED, and that Plaintiff's

complaint be and hereby is DISMISSED.

SO ORDERED.

_____

UNITED STATES DISTRICT JUDGE

DECLARATION OF F. GERARD HEINAUER

F. GERARD HEINAUER, pursuant to 28 U.S.C. § 1746, declares
the following:

1.  I am employed by the Department of Homeland Security
    ("DHS"), Citizenship and Immigration Services Division
    ("USCIS"), as the Director of the Nebraska Service
    Center in Lincoln, Nebraska.  It is in that capacity
    and based upon reasonable inquiry and my knowledge,
    information and belief that I provide this declaration.

2.  I am a named defendant in the case Dizayee v. Chertoff,
    07-02053, presently pending in the United States
    District Court for the District of Columbia.  Plaintiff
    Hoger A. Dizayee seeks to have his pending Form I-485,
    Application for Adjustment of Status, adjudicated.

3.  Plaintiff was admitted to the United States at New York
    City, New York, on August 25, 1998, as the derivative
    spouse of an alien previously granted asylum.  An alien
    who has been physically present in the United States
    for at least one year after being granted asylum (or
    derivative asylum) may apply for adjustment of status
    to that of a lawful permanent resident ("green card"
    holder) by filing Form I-485 at the Nebraska Service
    Center.  Plaintiff filed his Form I-485 on March 24,
    2003.  The application remains pending.

4.  At the time Plaintiff filed his application in 2003,
    asylum-based adjustment applications were subject to an
    annual cap of 10,000.  This cap led to a growing
    backlog of applications, with more than 185,000 asylees
    waiting for their "green cards".  These applications
    were adjudicated under the cap in the order in which
    they were filed.  As a result, applications like
    Plaintiff's that were filed in March 2003 faced an
    approximate waiting period of 10 years before their
    "priority date" became current.  In other words, under
    the law at the time the application was filed,
    Plaintiff would not be eligible to adjust status until
    sometime in fiscal year 2013.

5.  However, in May 2005, President Bush signed into law
    the REAL ID Act of 2005.  A provision of this new law
    lifted the 10,000 numerical cap on asylum adjustment
    applications.  The Nebraska Service Center has
    responded to this new law by increasing the number of
    adjudicators assigned to asylum-based adjustments and
    sending part of the pending caseload to other
    adjudicators at the Texas Service Center.

6.  General requirements for asylum-based adjustment of
    status applications are that the alien has been
    physically present in the United States for at least

one year after being granted asylum, continues to be a refugee/asylee (or the spouse or child of a refugee/asylee), is not firmly resettled in any foreign country, and is not inadmissible to the United States under listed statutory grounds that include health-related, criminal, and national security provisions.

7. When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S. Customs and Border Protection (CBP), and other DHS agencies (IBIS includes, but is not limited to,

information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity); and (c) and FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.  The public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petition for which checks are required.

8.  The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated.  Plaintiff was fingerprinted on August 15, 2003, and February 15, 2007.  The rescheduling of fingerprints is done to ensure that the case is ready to be adjudicated once all other issues are resolved.

9.  Plaintiffs' preliminary IBIS checks have been completed.  Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary.

10. Plaintiff's name check request was electronically submitted to the FBI on March 27, 2003, about 3 days after his Form I-485 was filed.  FBI completed the name check on April 3, 2003.

11. Plaintiff's application has been pending since May 2005 because the REAL ID Act also significantly amended the inadmissibility provisions at 8 U.S.C. 1182(a)(3)(definitions of terrorist activities, including providing material support to a terrorist organization) as well as the statutory bars to asylum. Plaintiff's adjustment of stats application included information indicating that he is or was a member or supporter of the Iraqi National Congress, an organization that may come within the definition of an undesignated terrorist organization.  The effect of these statutory changes on a case like Plaintiff's is still under review by USCIS.

12. In February 2007, the Secretary of Homeland Security exercised his authority not to apply the material support inadmissibility provisions with respect to aliens who had provided material support to 8 listed undesignated terrorist organizations, but that list did not include the Iraqi National Congress.

13. The Nebraska Service Center adjudicates cases through the mail; our officers do not conduct in-person interviews.  In light of the circumstances of Plaintiff's case, a request for evidence was issued on December 4, 2007, asking for details of Plaintiff's

history and activities with the Iraqi National
Congress.  Plaintiff's response to the request for
evidence was received on January 2, 2008, and is being
reviewed.

14. Aliens granted asylum or derivative asylum may apply
for and be granted work authorization documents and
refugee travel documents to enable them to travel
abroad while their application is pending.

15. USCIS is processing Mr. Dizayee's adjustment of status
application in accordance with standard procedures.

I declare under penalty of perjury that the foregoing is
true and correct.

Executed at Lincoln, Nebraska
on this 22nd day of February, 2008.

F. Gerard Heinauer
Service Center Director
Nebraska Service Center

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**JIANPING SUN,**

    **Plaintiff,**

      **v.**

**ALBERTO GONZALES, et al.,**

    **Defendants.**

</td><td>

**Civil Action No. 07-504 (JDB)**

</td></tr>
</table>

## ORDER

Plaintiff Jianping Sun, a native and citizen of the People's Republic of China, brings this action against the United States Department of Justice, the United States Citizenship and Immigration Services ("USCIS"), the United States Department of Homeland Security ("DHS"), the Federal Bureau of Investigation ("FBI"), and related officials within these departments. Plaintiff asks this Court to compel defendants to adjudicate without further delay his pending Form I-485 application for an adjustment of immigration status to become a lawful permanent resident.

Plaintiff filed his Application to Register Permanent Residence or Adjust Status (Form I-485) on April 24, 2004, along with a visa petition (Form I-140). Petition ¶ 9. After an alien applies for an adjustment of status, USCIS conducts a number of investigations to ensure that the alien is eligible for the benefit sought and is not a risk to national security. See Decl. of Naboone Puripongs ¶ 2; Fact Sheet at 1. Specifically, USCIS requests (a) an FBI fingerprint check for information relating to an applicant's criminal history within the United States; (b) a check against the DHS-managed Interagency Border Inspection System that "combines information

-1-

from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns"; and (c) an FBI name check, which reviews records maintained in "administrative, applicant, criminal, personnel and other files compiled by law enforcement." Fact Sheet at 2. USCIS also maintains the discretion and the authority to conduct other background investigations when necessary. Id.

According to the USCIS Fact Sheet regarding immigration security checks, "some cases legitimately take months or even several years to resolve" due to the complex, highly sensitive information that is involved in the process. Id. at 2-3. Yet, "USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take." Id. at 1.

Plaintiff's fingerprints were taken and submitted on April 14, 2005. Petition ¶ 9. However, two background checks remain outstanding for plaintiff's application: the FBI name check and the national security background investigation. The FBI name check request for plaintiff was received by the FBI on May 18, 2004, and remains pending. See Decl. of Michael A. Cannon ¶ 22. Also, during the processing of plaintiff's application, USCIS requested a national security screening of plaintiff, which remains ongoing. See Decl. of Naboone Puripongs ¶¶ 8-9.

Believing USCIS has unreasonably delayed the adjudication of his adjustment of status application, plaintiff filed with this Court a petition for mandamus on March 14, 2007. Defendants have now moved to dismiss plaintiff's case for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The issues in this matter are controlled by this Court's decision in Orlov v. Howard, Civil Action No. 07-350, issued on this

date. The Court refers the parties to the memorandum opinion issued in <u>Orlov</u> for a full discussion of the issues.

Stated succinctly, this Court lacks jurisdiction to review the ongoing pace at which plaintiff's application is being adjudicated. The Immigration and Nationality Act, 8 U.S.C. § 1255(a), provides that: "The status of an alien . . . <u>may be adjusted</u> by the Attorney General, <u>in his discretion</u> and under such regulations <u>as he may prescribe</u>, to that of an alien lawfully admitted for permanent residence if" certain conditions are met.[1] In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS. Because 8 U.S.C. § 1252(a)(2)(B)(ii) divests federal courts of jurisdiction to review a discretionary decision or action of USCIS, and an "action" includes any discretionary act or series of acts within the adjustment of status process (including the pace of completing various security checks), this Court lacks jurisdiction over plaintiff's petition.[2]

_____

[1]Although the text of 8 U.S.C. § 1255 refers to the Attorney General, the discretionary authority to adjudicate adjustment applications and promulgate regulations has been transferred to the Secretary of Homeland Security and the United States Citizenship and Immigration Services. <u>See</u> 6 U.S.C. §§ 271(b), 557. The Court will therefore refer to USCIS as the entity with discretionary authority.

[2]Section 1252(a)(2)(B), provides that:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
(i) any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] . . . , or

The Administrative Procedures Act ("APA") also does not confer jurisdiction upon this Court to review plaintiff's claim because the APA does not apply where "statutes preclude judicial review" or "where agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(1), (2).  And finally, mandamus may not issue here because plaintiff has failed to demonstrate that defendants have a clear duty to increase the pace at which they are processing his application and because plaintiff has failed to demonstrate that he has a clear right to the relief sought.  See In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (explaining that "a district court may grant mandamus relief if '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff'") (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)).

Accordingly, upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, and for the reasons stated in the memorandum opinion issued on this date in Orlov v. Howard, it is this 10th day of December, 2007, hereby

**ORDERED** that [8] defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that the case is dismissed against all defendants.

**SO ORDERED.**

                         /s/ John D. Bates
                        JOHN D. BATES
                United States District Judge

---

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .