## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| HOGER A. DIZAYEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 1:07cv2053 (HHK) |
| | ) | |
| MICHAEL CHERTOFF, Secretary, | ) | |
| United States Department of Homeland | ) | |
| Security, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## <u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

**I.    Introduction**

Defendants, Michael Chertoff, Emilio Gonzalez, Robert Mueller, and Gerard Heinauer, have moved to dismiss Plaintiff's Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Contrary to Defendants' Motion, this Court is not stripped of its jurisdiction by virtue of § 1252 of the Immigration and Naturalization Act (INA).  This Court retains subject matter jurisdiction over Plaintiff's claim pursuant to the Administrative Procedure Act (APA) and the Mandamus Act.  Defendants owe Plaintiff a legal duty to adjudicate his adjustment of status application within a reasonable period of time, and they have failed to meet that duty by unreasonably delaying the adjudication for nearly five years.  Accordingly, Plaintiff has stated a claim upon which relief can be granted, and the Court should deny Defendants' Motion.

## II.    Background[1]

In 1996, the United States Government offered to evacuate Plaintiff, Hoger Dizayee, and his family from Iraq because Saddam Hussein's regime targeted him due to his humanitarian efforts.  See Pl.'s Ex. 15.  Such efforts included working with various United States organizations and an arm of the Iraqi National Congress to rehabilitate areas decimated by Hussein.  Id.  Plaintiff's family reached the evacuation point in a timely manner, but he could not get to the evacuation point because of its considerable distance from his work location. Plaintiff's family arrived in the United States in 1997, and his wife immediately petitioned for his admission as the spouse of an asylee.  Id.  Plaintiff was admitted to the United States on August 25, 1998 as an asylee.[2]  Compl. ¶ 11.

On March 24, 2003, in accordance with 8 U.S.C. § 1159(b), Plaintiff submitted an adjustment of status (I-485) application to the United States Citizenship and Immigration Services (USCIS) Nebraska Service Center.  Compl. ¶ 12.  Section 1159(b) permits the Secretary of Homeland Security or the Attorney General to adjust the status of an asylee to permanent resident if the asylee (1) submits an application; (2) has been physically present in the United States for one year after the grant of asylum; (3) remains a refugee; (4) is not firmly resettled in a foreign country; and (5) is admissible as an immigrant.  8 U.S.C. § 1159(b); see also Heinauer Decl. ¶ 6.  Plaintiff was, and remains, fully eligible for adjustment of status to permanent resident.

---

[1] Plaintiff has provided an abbreviated statement of the facts in this Opposition as most of the facts are fully set forth in the Complaint and accompanying exhibits.

[2]  As previously noted, Plaintiff's I-94 form incorrectly noted that he was admitted as a refugee, not an asylee.  See Compl. ¶ 14. USCIS corrected this error in June 2004.  See id. ¶ 15.

Before adjusting an asylee's status to permanent resident, USCIS conducts several security checks. These checks include: a Federal Bureau of Investigation (FBI) fingerprint check for criminal history; a check against the Interagency Border Inspection System (IBIS); and an FBI name check. Heinauer Decl. ¶ 7. According to Defendants, USCIS has completed all of Plaintiff's pre-adjudication security checks. Id. ¶¶ 8-10. Yet, USCIS still has not adjudicated Plaintiff's adjustment application.

During the nearly five-year period that Plaintiff's application has been pending, USCIS has sent Plaintiff only two Requests for Evidence. First, in May 2004, USCIS requested payment of the filing fee and Plaintiff's original I-94 form. Compl. ¶ 14. Second, more than three years later and, most notably, after Plaintiff filed this lawsuit, USCIS requested information regarding Plaintiff's involvement with the Iraqi National Congress. Heinauer Decl. ¶ 13. Despite Plaintiff's dutiful and timely responses to both of these requests, USCIS still refuses to adjudicate Plaintiff's application. Compl. ¶ 15; Pl's Ex. 15. Consequently, Plaintiff's business has suffered and he has been denied the multitude of benefits associated with permanent resident status. Compl. ¶¶ 34-35.

## III.     Standard of Review

Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that the Court lacks subject matter jurisdiction over this action. Plaintiff seeks to invoke the jurisdiction of this Court, and therefore, he bears the burden of establishing jurisdiction. Thompson v. The Capitol Police Bd., 120 F. Supp.2d 78, 81 (D.D.C. 2000); see also U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). In evaluating Defendants' Motion, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson, 120 F. Supp. 2d at 81.

The Court may look to materials beyond the pleadings to determine subject matter jurisdiction, so long as it still accepts the factual allegations in the complaint as true. <u>Jerome Stevens Pharm. v. FDA</u>, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992); <u>Bernard v. U.S. Dep't of Def.</u>, 362 F. Supp. 2d 272, 277 (D.D.C. 2005).

## IV.    Argument

### A.    The INA Does Not Divest the Court of Jurisdiction

The INA does not divest this Court of jurisdiction because Plaintiff is not challenging actions specified to be within the discretionary authority of USCIS.  The jurisdiction stripping provision of the INA, 8 U.S.C. § 1252(a)(2)(B), limits judicial review only to the extent a party challenges a "<u>decision or action</u> . . . the authority for which is <u>specified</u> under this subchapter[3] to be within the <u>discretion</u> of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B) (emphasis added).  As the statutory language evidences, § 1252 strips courts of jurisdiction for the narrow category of cases where the following conditions are met: USCIS has made a decision or taken action, and that decision or action is specifically delineated as discretionary.   Section 1252 is inapplicable to this action because USCIS has not made a decision nor taken action on Plaintiff's application, and its duty to take such action is mandatory, not discretionary.

First, § 1252 is inapplicable to this case because Plaintiff is not challenging a "decision or action."  Rather, he is challenging the absence of a decision or action, and asking the Court to rectify USCIS's gross inaction.  <u>See</u> <u>Liu v. Novak</u>, 509 F. Supp. 2d 1, 6 (D.D.C. 2007). Specifically, he is challenging Defendants' failure to render any decision on his application.  As this Court has made clear, review over USCIS's inaction is not barred by § 1252.  <u>Id.</u> at 6-7.

---

[3] This subchapter refers to 8 U.S.C. §§ 1151 <u>et seq.</u>

Furthermore, many courts have discounted Defendants' argument, derived from <u>Safadi v. Howard</u>, that the processing pace for adjustment of status applications constitutes "action" within the meaning of § 1252.  466 F. Supp. 2d 696 (E.D. Va. 2006).  For example, the <u>Duan</u> court noted that interpreting the term action to include the pace of the adjudication process "would render toothless all timing restraints, including those imposed by the APA . . . [and] would amount to a grant of permission of inaction . . . ."  <u>Duan v. Zamberry</u>, No. 06-1351, 2007 U.S. Dist. LEXIS 12697, at *8-9 (W.D. Pa. Feb. 23, 2007).  The <u>Aslam</u> court also discredited and rejected <u>Safadi</u>'s reasoning, noting that, "[i]f the pace of the Secretary's decision were immune from judicial review, the Executive Branch could unilaterally impose a <u>de facto</u> moratorium on all adjustment of status applications simply by delaying a final decision."  <u>Aslam v. Mukasey</u>, 1:07cv331, 2008 U.S. Dist. LEXIS 5616, at *13-14 (E.D. Va. Jan. 25, 2008).  Additionally, this Court rejected the reasoning of <u>Safadi</u>, concluding that USCIS's failure to process an application constituted inaction, which is distinct from action.  <u>Liu v. Novak</u>, 509 F. Supp. 2d at 6-7 ("The Court is not persuaded by the 'plain meaning' argument in <u>Safad[i]</u> . . . .")  In fact, the <u>Safadi</u> court itself recognized the limitations of its reasoning, qualifying its holding by stating that it was not addressing the situation where USCIS actually or effectively, through unreasonable delay, refused to process an application.  <u>Safadi</u>, 466 F. Supp. 2d at 700.

Second, § 1252 is inapplicable to this action because Congress has not specified that the sole authority for the action is within USCIS's discretion.  <u>See</u> <u>Ren v. Mueller</u>, No. 6:07-790, 2008 U.S. Dist. LEXIS 4300, at *15 (M.D. Fla. Jan. 22, 2008) ("That is, the use of the word 'specified' indicates that a statute must explicitly list a particular discretionary act to remove it from judicial review."); <u>see also</u> <u>Duan</u>, 2007 U.S. Dist. LEXIS 12697, at *5-6 (citing <u>Alaka v. Attorney General of the United States</u>, 456 F.3d 88, 95 (3d Cir. 2006)).  Although it is within

5

Defendants' discretion to adjust Plaintiff's status, <u>see</u> 8 U.S.C. § 1159, that section "does not address, much less specify any discretion associated with, the pace of application processing." <u>Duan</u>, 2007 U.S. Dist. LEXIS 12697, at *7.  The absence of an explicit provision specifying USCIS's discretion precludes the application of § 1252 to this action.  <u>See Ren</u>, 2008 U.S. Dist. LEXIS 4300, at *15 (concluding that Congress's silence indicated that it did not intend to remove the pace of adjudication from judicial review); <u>Duan</u>, 2007 U.S. Dist. LEXIS 12697, at *5-6, 9 n.2.

Third, § 1252 is inapplicable to this action because the duty to adjudicate Plaintiff's application is nondiscretionary.  In fact, USCIS itself has conceded a mandatory duty to act on applications for adjustment of status.  <u>Singh v. Still</u>, 470 F. Supp. 2d 1064, 1068 (N.D. Cal. 2007); <u>Gelfer v. Chertoff</u>, No. C06-06724, 2007 U.S. Dist. LEXIS 26466, at *4 (N.D. Cal. Mar. 22, 2007).  The regulations support this assertion.  For example, with respect to asylum-based applications for adjustment of status, 8 C.F.R. § 209.2(f) provides, "[t]he applicant <u>shall</u> be notified of the decision, and if the application is denied, of the reasons for denial." 8 C.F.R. § 209.2(f) (emphasis added); <u>see also</u>, <u>Singh</u>, 470 F. Supp. 2d at 1068 (relying, in part, on immigration regulations to conclude that CIS has a mandatory duty to act on applications); <u>Aslam</u>, 2008 U.S. Dist. LEXIS 5616, at * 14, n.5 (citing regulations in support of finding non-discretionary duty to adjudicate); <u>Ren</u>, 2008 U.S. Dist. LEXIS 4300, at *17-18 (same).  The use of "shall" indicates that USCIS is required to make a decision on every asylum-based application for adjustment of status.  <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 65 (2004).  By comparison, the statute granting the Secretary the discretion to grant an I-485 application provides that the Secretary or Attorney General "may" adjust an asylee's status to that of permanent resident.  8 U.S.C. § 1159(b).

6

Further, courts have discounted Defendants' argument that the pace of USCIS's application process is discretionary. Specifically, Defendants' argue that USCIS's discretion over the adjudication process "necessarily extends to the assessment of when, whether, and how to grant that application." Mot. to Dismiss 9. Courts have, however, distinguished review of "whether" USCIS grants an application from "when" and "how" USCIS assesses an application, concluding that the latter is not within the ambit of § 1252. See, e.g., Liu v. Chertoff, No. 06-2808, 2007 U.S. Dist. LEXIS 50173, at *10-13 (E.D. Cal. Aug. 22, 2007) (distinguishing USCIS's mandatory duty to process I-485 applications from its discretion to grant or deny adjustment of status); Yu v. Brown, 36 F. Supp. 2d 922, 931 (D.N.M. 1999) (same). This distinction—between the duty to take some discretionary action and the discretionary decision itself—renders the jurisdiction stripping clause of § 1252(a)(2)(B) inapplicable to this action. Thus, although the ultimate decision of whether to adjust Mr. Dizayee's status to permanent resident is within the Secretary's discretion, the duty to make a decision on his application is not. See Yu, 36 F. Supp. 2d at 931 (concluding that USCIS has a mandatory duty to adjudicate applications); Singh, 470 F. Supp. 2d at 1068 (same).

A plethora of district courts, including this Court, have concluded that § 1252(a)(2)(B) does not bar judicial review of USCIS's failure to process adjustment of status applications. See, e.g., Liu v. Novak, 509 F. Supp. 2d at 7 ("[T]he Court concludes that § 1252(a)(2)(B)(ii) does not eliminate this Court's jurisdiction over plaintiff's claim."); Aslam, 2008 U.S. Dist. LEXIS 5616, at * 10 -12, n.4, 14 (finding jurisdiction and collecting over 30 cases concluding the same); Liu v. Chertoff, 2007 U.S. Dist. LEXIS 50173; Duan, 2007 U.S. Dist. LEXIS 12697. This narrow reading of § 1252(a)(2)(B) is consistent with the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." McNary v.

Haitian Refugee Ctr., Inc., 498 U.S. 479, 496 (1991); see also Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 298 (2001).   Accordingly, § 1252 is inapplicable to this action and the Court should deny Defendants' Motion.

### B.    The Court Has Jurisdiction Over This Action Pursuant to the APA

The APA, in conjunction with 28 U.S.C. § 1331, grants the Court jurisdiction over this action.  28 U.S.C. § 1331 (granting district courts jurisdiction over "all actions arising under the Constitution, laws, or treaties of the United States").  The APA requires USCIS to conclude matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and it authorizes suit by a person, such as Plaintiff, suffering legal wrong because of agency inaction.  Id. § 702 (permitting judicial review); § 551(13) (defining action to include inaction).   Further, it permits this Court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Judicial review of agency inaction is permissible if plaintiff alleges that "the pace of the agency decisional process lags unreasonably."  See Sierra Club v. Thomas, 828 F.2d 783, 794 (D.C. Cir. 1987), cited in Liu v. Novak, 509 F. Supp. 2d at 9.  Thus, although the APA is not an independent source of jurisdiction, Califano v. Sanders, 430 U.S. 99, 107 (1977), courts have jurisdiction, pursuant to § 1331, to determine whether an agency acted in violation of § 555 of the APA, and to compel action under § 706.  Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F. 3d 1094, 1099-1100 (D.C. Cir. 2003).  In fact, this Court has recently exercised such jurisdiction to review a nearly identical claim.  Liu v. Novak, 509 F. Supp. 2d at 9.

Plaintiff has established jurisdiction under the APA because Plaintiff has alleged that Defendants' delay is unreasonable.  As Plaintiff's application has been pending for nearly five years, he has established a prima facie case of unreasonable delay.  See Aslam, 2008 U.S Dist. LEXIS 5616, at *18.   To determine whether agency delay is unreasonable, this Court considers

six factors:  (1) the "rule of reason"; (2) the speed at which Congress expects the agency to proceed; (3) whether the delay affects human health and welfare; (4) the effect of expediting agency action on activities with higher or competing priority; (5) the nature and extent of the interests prejudiced by the delay; and (6) that action can be "unreasonably delayed" without finding impropriety on the part of the agency.  Telecomm. Research & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) (citations omitted).  The first and second factors weigh in Plaintiff's favor.  Plaintiff's application has been pending for nearly five years, which exceeds the rule of reason and is contrary to stated congressional intent as well as USCIS's published processing times.  See Liu v. Novak, 509 F. Supp. 2d at 9-10.  The third and fifth factors also weigh in Plaintiff's favor.  The failure of Defendants to process Plaintiff's application affects his welfare and denies him access to the wide range of benefits permanent resident status confers. See id.  With regard to the fourth factor, there is no indication that expediting adjudication of Plaintiff's application would, in any way, affect activities with higher or competing priority.

    Defendants appear to argue that their delay is reasonable because, in the interest of national security, USCIS is conducting an "ongoing" investigation of Plaintiff's membership in the Iraqi National Congress (INC).  This argument is without merit for several reasons.  First, Defendants' use of the term "ongoing" is dubious as they did not request any information regarding Plaintiff's INC membership until after Plaintiff filed this lawsuit.  See Pl.'s Ex. 15.  In fact, before Plaintiff filed this lawsuit, USCIS had not taken any action on Plaintiff's application since June 2004.[4]  See Singh, 470 F. Supp. 2d at 1068 (considering USCIS's failure to take action until after plaintiff filed suit in determining delay was unreasonable).  Second, it is unclear

---

[4]  This is exclusive of USCIS's request that Plaintiff submit a new fingerprint card as that action was required only because of the long processing delay.  See Heinauer Decl. ¶ 8 (noting that a fingerprint check must be less than 15 months old at the time of adjudication).

how national security interests would be affected by adjusting Plaintiff's status as he has been living in this country since 1998 without incident. See id. at 1070 (endorsing similar reasoning). Third, USCIS was aware of Plaintiff's membership in the INC when it granted him asylum. In fact, the United States Government coordinated his family's entry into the country specifically because Plaintiff was targeted for his role in the INC. See Pl.'s Ex. 15. Fourth, USCIS is not without remedy if it adjusts Plaintiff's status and later discovers that he is a threat to national security as it can move to rescind the grant of residency or initiate removal proceedings. See Singh, 470 F. Supp. 2d at 1070; 8 U.S.C. § 1227 (setting forth deportability standards); 8 U.S.C. § 1256 (allowing rescission of adjustment of status). USCIS endorsed this very reasoning in its recent memorandum mandating approval of all adjustment applications where an FBI name check has been pending for more than 180 days on an otherwise approvable application. See Pl.'s Ex. 16.

Similarly, Defendants' other argument regarding the reasonableness of the delay is also without merit. Defendants' appear to argue that their delay is reasonable because prior law limited the number of asylees admitted for permanent residence. This cap would have resulted in Plaintiff being forced to wait until 2013 to have his application adjusted. It is nonsensical to argue that, because Plaintiff would have been forced to wait under an old law, it is reasonable to make him wait now, when no cap on adjustments exists. In fact, congressional debate on this provision of the REAL ID Act of 2005 indicates that the purpose of removing the cap was to remove the backlog of applicants, which "caused unnecessary hardship to aliens already found to have been fleeing persecution." 151 Cong. Rec. 14, H532 (2005). Further, even assuming arguendo that Defendants' argument has merit, if the Court calculated the delay from the date the law changed, Plaintiff's application would still have been pending for nearly three years.

Numerous courts have found delays of three years and fewer unreasonable.  <u>See, e.g.</u>, <u>Aslam</u>, 2008 U.S. Dist. LEXIS 5616; <u>Liu v. Chertoff</u>, 2007 U.S. Dist. LEXIS 21772.

Finally, § 701 of the APA does not divest this Court of jurisdiction because USCIS has a mandatory, nondiscretionary duty to process Plaintiff's application, as discussed <u>supra</u> Part IV.A. <u>See</u> 5 U.S.C. § 701(a)(2) (prohibiting judicial review of actions committed to agency discretion). Numerous courts, including this Court, have determined that USCIS's duty to adjudicate adjustment applications is nondiscretionary, and therefore, jurisdiction exists under the APA. <u>Liu v. Novak</u>, 509 F. Supp. 2d at 9; <u>see also, e.g.</u>, <u>Yong Tang v. Chertoff</u>, 493 F. Supp. 2d 148, 156 (D. Mass. 2007); <u>Duan</u>, 2007 U.S. Dist. LEXIS 12697 at *12-13; <u>Kim v. Aschroft</u>, 340 F. Supp. 2d 384, 391 (S.D.N.Y. 2004) (same).  Accordingly, the Court should deny Defendants' Motion because Plaintiff has established jurisdiction under the APA.

### C.    The Court Also Has Jurisdiction Over This Action Pursuant to the Mandamus Act

Plaintiff is also entitled to invoke this Court's jurisdiction pursuant to the Mandamus Act. The Mandamus Act provides that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  This Court may grant mandamus relief if three conditions are met: (1) plaintiff has a clear right to relief; (2) defendants have a clear, non-discretionary duty to act; and (3) no other adequate remedy is available to plaintiff.  <u>In re Medicare Reimbursement Litig.</u>, 414 F.3d 7, 10 (D.C. Cir. 2005) (citations omitted).  Plaintiff has met these conditions.

Defendants have a mandatory, nondiscretionary duty to process Plaintiff's application for adjustment of status. See Part IV.A. As discussed supra, codified regulations impose a legal duty on Defendants to adjudicate asylum-based adjustment applications. See 8 C.F.R. § 209.2(f) ("The applicant shall be notified of the decision, and if the application is denied, of the reasons for denial.") (emphasis added); see also 8 C.F.R. § 209.2(e) ("Each applicant for adjustment of status under this part shall be interviewed by an immigration officer.") (emphasis added). The use of "shall" in the regulations indicates that USCIS has a legal duty to act. Ren, 2008 U.S. Dist. LEXIS 4300, at *22 (citing Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 65 (2004)). In fact, USCIS itself has conceded a mandatory duty to act on applications for adjustment of status. Singh, 470 F. Supp. 2d at 1068; Gelfer, 2007 U.S. Dist. LEXIS 26466, at *4.

Furthermore, Defendants incorrectly assert that Plaintiff does not have a clear right to relief because of the absence of specific time restraints on the adjudication process. Plaintiff does, in fact, have a clear right to relief because the APA imposes a time restraint on the adjudication process. See supra, Part IV.B.; see also, e.g., Aslam, 2008 U.S. Dist. LEXIS 5616, at *17; Ren, 2008 U.S. Dist. LEXIS 4300, at *28. As the Tang court noted, "The duty to act is no duty at all if the deadline is eternity." Tang, 493 F. Supp. 2d at 149. The APA imposes on USCIS a duty to complete the adjudication of Plaintiff's application, "within a reasonable time," 5 U.S.C. § 555(b) (emphasis added), and it permits the Court to compel USCIS action "unreasonably delayed." Id. § 706 (emphasis added). The statutory language of the APA indicates that Congress intended the courts to "delve into the question of what is 'reasonable' in the pacing of adjudication." Tang, 493 F. Supp. 2d at 155. If, as Defendants suggest, judicial review under the APA were limited to situations where the time frame for agency action was

explicit, then the inclusion of "reasonable" and "unreasonably" in the statute would be superfluous. Thus, Plaintiff has a clear right to relief because the APA imposes an obligation on Defendants to complete the adjudication of Plaintiff's application within a reasonable period of time.

Last, mandamus is the appropriate remedy because Plaintiff lacks an adequate alternative remedy. Plaintiff has exhausted all administrative remedies available to him through his repeated formal inquiries to USCIS. See Compl.¶¶ 26-29. As the Ren court stated, "Courts reaching this question have consistently found that there is no adequate alternative remedy available to immigrants seeking adjudication of their adjustment applications." Ren, 2008 U.S. Dist. LEXIS 4300, at *28-29 (citations omitted). Defendants do not appear to dispute this point. Thus, Plaintiff has established jurisdiction under the Mandamus Act. Numerous district courts have reached a similar conclusion. See, e.g., Ren, 2008 U.S. Dist. LEXIS 4300, at *29; Liu v. Chertoff, 2007 U.S. Dist. LEXIS 50173, at *14-15; Duan, 2007 U.S. Dist. LEXIS 1297, at *11. Accordingly, the Court should deny Defendants' Motion to Dismiss.

## V.     Conclusion

In sum, the Court should deny Defendants' Motion to Dismiss because the Court has jurisdiction pursuant to both the APA and the Mandamus Act, and § 1252 does not strip the Court of jurisdiction.


Dated: March 20, 2008                                    Respectfully submitted,

                                                        /s/     Lynda Zengerle
                                                        Lynda Zengerle, Esquire
                                                        D.C. Bar number: 163360
                                                        Steptoe & Johnson, LLP
                                                        1330 Connecticut Avenue, N.W.
                                                        Washington, D.C.  20036-1795
                                                        (202) 429-8170
                                                        lzengerle@steptoe.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HOGER A. DIZAYEE,                           )
                            )
               Plaintiff,        )
                            )
            v.                )      Case Number: 1:07cv2053 (HHK)
                            )
MICHAEL CHERTOFF, Secretary,                )
United States Department of Homeland        )
Security, et al.,                           )
                            )
              Defendants.        )
                            )

## ORDER

Upon consideration of Defendants' Motion to Dismiss, it is this _____ day of

_____, 2008,

ORDERED that Defendants' Motion to Dismiss be and hereby is DENIED.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521



U.S. Citizenship
and Immigration
Services

December 04, 2007

Refer to File Number: LIN0313651051

HOGER A DIZAYEE
7233 BLADEN PL
GAINESVILLE VA 20155

Dear Sir or Madam:

RE: Form: I485

      Beneficiary:    DIZAYEE, HOGER

### REQUEST FOR EVIDENCE

The documentation submitted is not sufficient to warrant favorable consideration of your
petition/application.

## See Attachment for Details

## Your response must be received in this office by January 03, 2008.

Your case is being held in this office pending your response. Within this period you may:

1. Submit all of the evidence requested;
2. Submit some or none of the evidence requested and ask for a decision based upon the record; or
3. Withdraw the application or petition. (It is noted that if you request that the application or
   petition be withdrawn, the filing fee cannot be refunded).

You must submit all of the evidence at one time. Submission of only part of the evidence requested
will be considered a request for a decision based upon the record. No extension of the period allowed
to submit evidence will be granted. If the evidence submitted does not establish that your case was
approvable at the time it was filed, it can be denied.

If you do not respond to this request within the time allowed, your case will be considered abandoned
and denied. Evidence received in this office after the due date may not be considered.

**PLACE THIS LETTER ON TOP OF YOUR RESPONSE. SUBMISSION OF EVIDENCE
WITHOUT THIS LETTER WILL DELAY PROCESSING OF YOUR CASE AND MAY
RESULT IN A DENIAL. PLEASE USE THE ENCLOSED ENVELOPE TO MAIL
ADDITIONAL EVIDENCE REQUEST BACK TO THIS OFFICE.**

Sincerely,

F. Gerard Heinauer
Director
NSC/TJK EX186

PLAINTIFF'S
EXHIBIT
15

Receipt Number:  LIN0313651051

# Attachment

You must submit a properly completed Form G-325A, Biographic Information Sheet, for yourself.  Your original signature is required on the Form G-325A.  Photocopied signatures are not acceptable.  Blank immigration forms and information are available online from the official Service website: www.uscis.gov.  You may also order immigration forms by phone at 1-800-870-3676.

If you have traveled outside the United States since you were granted asylum, submit evidence of the exact dates you traveled, the countries that you visited and the purpose of your trips.  This evidence should include copies of passports, travel documents issued by this service, and any I-94 issued upon reentry into the United States.

Your indicated on your previous G-325A that you were the Deputy Director of the Iraqi National Congress.  Please fully describe your membership history and activities in the INC.

STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

Lynda S. Zengerle
202.429.8170
lzengerle@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

December 31, 2007

**Via Overnight Express Mail**
US Dept. of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521

### REQUEST FOR EVIDENCE

**Re:    BENEFICIARY: HOGER DIZAYEE**
**FILE NO: LIN0313651051**

Dear Sir:

I am responding to your request for evidence in the above-referenced matter. Our client, Hoger Dizayee, has filed for permanent residency based on an approved application for asylum. In response to your request, enclosed are the following:

1.    Form G-325A, Biographic Information Sheet, four original signed pages.

2.    Documentation evidencing exact dates traveled outside of the United States, countries visited, and purpose of trips; passports, travel documents issued by USCIS, and I-94 forms, copies.

3.    Description of membership history in Iraqi National Congress and activities in the INC and letters of reference concerning INC membership, copies.

Our client has complied with all of your requests and has provided all of the documentation listed. He has also included letters of reference documenting and explaining his membership in the Iraqi National Congress. We look forward to a favorable decision in this matter as soon as possible as it has been pending for several years. If you have any questions or need additional information, please contact me. Thank you for your assistance and cooperation.

Sincerely,

Lynda S. Zengerle

Enclosures

OMB No. 1615-0008: Exp. 05/31/09

Department of Homeland Security
U.S. Citizenship and Immigration Services

# G-325A, Biographic Information

| (Family Name) | (First Name) | (Middle Name) | ☒ Male ☐ Female | Birth Date (mm/dd/yyyy) 1962 | Citizenship/Nationality IRAQI | File Number A 076852336 |
|---|---|---|---|---|---|---|
| DIZAYEE | HOGER | AHMED | | | | |

| All Other Names Used (Including names by previous marriages) NONE | City and Country of Birth ERBIL, IRAQ | U.S. Social Security # (If any) |
|---|---|---|

| | Family Name | First Name | Date, City and Country of Birth (If known) | City and Country of Residence |
|---|---|---|---|---|
| Father | DEZAYEE | AHMED | 1932  IRAQ | MANASSAS, VA. USA |
| Mother (Maiden Name) | DEZAYEE | GALADIZH | 1939  IRAQ | MANASSAS, VA. USA |

| Husband or Wife (If none, so state.) Family Name (For wife, give maiden name) | First Name | Birth Date (mm/dd/yyyy) | City and Country of Birth | Date of Marriage | Place of Marriage |
|---|---|---|---|---|---|
| DIZAYEE | HATAW | 1962 | ERBIL, IRAQ | 1993 | IRAQ |

| Former Husbands or Wives (If none, so state) Family Name (For wife, give maiden name) | First Name | Birth Date (mm/dd/yyyy) | Date and Place of Marriage | Date and Place of Termination of Marriage |
|---|---|---|---|---|
| NONE | NONE | | | |

**Applicant's residence last five years. List present address first.**

| Street and Number | City | Province or State | Country | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|---|---|
| 7233 BLADEN PLACE | GAINESVILE | VIRGINIA | USA | 10 | 2006 | Present Time | |
| 12184 DRUM SALUTE PLACE | BRISTOW | VIRGINIA | USA | 10 | 2003 | 09 | 2006 |
| 9573 NITTANY DRIVE. APT. # 204 | MANASSAS | VIRGINIA | USA | 12 | 2001 | 09 | 2003 |
| | | | | | | | |
| | | | | | | | |

**Applicant's last address outside the United States of more than one year.**

| Street and Number | City | Province or State | Country | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|---|---|
| NONE | | | | | | | |

**Applicant's employment last five years. (If none, so state.) List present employment first.**

| Full Name and Address of Employer | Occupation (Specify) | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|
| Sigma Builders, Inc. 14120 Parke Long Court. Ste. 201. Chantilly, VA 20151 | President | 10 | 2004 | Present Time | |
| Iraqi National Congress. 1006 Pennsylvania Ave. SE. Washington, DC 20003 | Deputy Director | 12 | 2000 | 06 | 2004 |
| | | | | | |
| | | | | | |

**Show below last occupation abroad if not shown above. (Include all information requested above.)**

| Pierce Company Erbil, Ainkawa. Iraq. | Owner, Engineer | 08 | 1994 | 08 | 1996 |
|---|---|---|---|---|---|

| This form is submitted in connection with an application for: ☐ Naturalization ☐ Other (Specify): ☒ Status as Permanent Resident | Signature of Applicant _Hoger Dizayee_ | Date 12/28/2007 |
|---|---|---|

| Submit all copies of this form. | If your native alphabet is in other than Roman letters, write your name in your native alphabet below: |
|---|---|

**Penalties:** Severe penalties are provided by law for knowingly and willfully falsifying or concealing a material fact.

**Applicant:** Be sure to put your name and Alien Registration Number in the box outlined by heavy border below.

| Complete This Box (Family Name) | (Given Name) | (Middle Name) | (Alien Registration Number) |
|---|---|---|---|
| DIZAYEE | HOGER | AHMED | A 076852336 |

Department of Homeland Security
U.S. Citizenship and Immigration Services

OMB No. 1615-0008; Exp. 05/31/09

# G-325A, Biographic Information

| (Family Name) DIZAYEE | (First Name) HOGER | (Middle Name) AHMED | ☒ Male ☐ Female | Birth Date (mm/dd/yyyy) ▓▓1962 | Citizenship/Nationality IRAQI | File Number A 076852336 |
|---|---|---|---|---|---|---|

| All Other Names Used (Including names by previous marriages) NONE | City and Country of Birth ERBIL, IRAQ | U.S. Social Security # (If any) |
|---|---|---|

| | Family Name | First Name | Date, City and Country of Birth (If known) | City and Country of Residence |
|---|---|---|---|---|
| Father | DEZAYEE | AHMED | ▓▓932   IRAQ | MANASSAS, VA. USA |
| Mother (Maiden Name) | DEZAYEE | GALADIZH | 01/0▓/939   IRAQ | MANASSAS, VA. USA |

| Husband or Wife (If none, Family Name so state.) (For wife, give maiden name) | First Name | Birth Date (mm/dd/yyyy) | City and Country of Birth | Date of Marriage | Place of Marriage |
|---|---|---|---|---|---|
| DIZAYEE   IBRAHIM | HATAW | ▓▓1962 | ERBIL, IRAQ | 09/21/1993 | IRAQ |

| Former Husbands or Wives (If none, so state) Family Name (For wife, give maiden name) | First Name | Birth Date (mm/dd/yyyy) | Date and Place of Marriage | Date and Place of Termination of Marriage |
|---|---|---|---|---|
| NONE | NONE | | | |

**Applicant's residence last five years. List present address first.**

| Street and Number | City | Province or State | Country | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|---|---|
| 7233 BLADEN PLACE | GAINESVILE | VIRGINIA | USA | 10 | 2006 | Present Time | |
| 12184 DRUM SALUTE PLACE | BRISTOW | VIRGINIA | USA | 10 | 2003 | 09 | 2006 |
| 9573 NITTANY DRIVE. APT. # 204 | MANASSAS | VIRGINIA | USA | 12 | 2001 | 09 | 2003 |
| | | | | | | | |
| | | | | | | | |

**Applicant's last address outside the United States of more than one year.**

| Street and Number | City | Province or State | Country | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|---|---|
| NONE | | | | | | | |

**Applicant's employment last five years. (If none, so state.) List present employment first.**

| Full Name and Address of Employer | Occupation (Specify) | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|
| Sigma Builders, Inc. 14120 Parke Long Court. Ste. 201. Chantilly, VA 20151 | President | 10 | 2004 | Present Time | |
| Iraqi National Congress. 1006 Pennsylvania Ave. SE. Washington, DC 20003 | Deputy Director | 12 | 2000 | 06 | 2004 |
| | | | | | |
| | | | | | |
| | | | | | |

**Show below last occupation abroad if not shown above. (Include all information requested above.)**

| Pierce Company Erbil, Ainkawa. Iraq. | Owner, Engineer | 08 | 1994 | 08 | 199▓ |
|---|---|---|---|---|---|

| This form is submitted in connection with an application for: ☐ Naturalization   ☐ Other (Specify): _____ ☒ Status as Permanent Resident | Signature of Applicant *[signature]* | Date 12/28/2007 |
|---|---|---|
| **Submit all copies of this form.** | If your native alphabet is in other than Roman letters, write your name in your native alphabet below: | |

Penalties: Severe penalties are provided by law for knowingly and willfully falsifying or concealing a material fact.

## Applicant: Be sure to put your name and Alien Registration Number in the box outlined by heavy border below.

| Complete This Box  (Family Name) | (Given Name) | (Middle Name) | (Alien Registration Number) |
|---|---|---|---|
| DIZAYEE | HOGER | AHMED | A 076852336 |

OMB No. 1615-0008; Exp. 05/31/09

Department of Homeland Security
U.S. Citizenship and Immigration Services

# G-325A, Biographic Information

| (Family Name) | (First Name) | (Middle Name) | ☒ Male ☐ Female | Birth Date (mm/dd/yyyy) | Citizenship/Nationality | File Number |
|---|---|---|---|---|---|---|
| DIZAYEE | HOGER | AHMED | | 1962 | IRAQI | A 076852336 |

| All Other Names Used (Including names by previous marriages) | City and Country of Birth | U.S. Social Security # (If any) |
|---|---|---|
| NONE | ERBIL, IRAQ | |

| | Family Name | First Name | Date, City and Country of Birth (If known) | City and Country of Residence |
|---|---|---|---|---|
| Father | DEZAYEE | AHMED | 32  IRAQ | MANASSAS, VA. USA |
| Mother (Maiden Name) | DEZAYEE | GALADIZH | 1939  IRAQ | MANASSAS, VA. USA |

| Husband or Wife (If none, so state.) Family Name (For wife, give maiden name) | First Name | Birth Date (mm/dd/yyyy) | City and Country of Birth | Date of Marriage | Place of Marriage |
|---|---|---|---|---|---|
| DIZAYEE  IBRAHIM | HATAW | 1962 | ERBIL, IRAQ | 09/21/1993 | IRAQ |

| Former Husbands or Wives (If none, so state) Family Name (For wife, give maiden name) | First Name | Birth Date (mm/dd/yyyy) | Date and Place of Marriage | Date and Place of Termination of Marriage |
|---|---|---|---|---|
| NONE | NONE | | | |

| Applicant's residence last five years. List present address first. | | | | From | | To | |
|---|---|---|---|---|---|---|---|
| Street and Number | City | Province or State | Country | Month | Year | Month | Year |
| 7233 BLADEN PLACE | GAINESVILE | VIRGINIA | USA | 10 | 2006 | Present Time | |
| 12184 DRUM SALUTE PLACE | BRISTOW | VIRGINIA | USA | 10 | 2003 | 09 | 2006 |
| 9573 NITTANY DRIVE. APT. # 204 | MANASSAS | VIRGINIA | USA | 12 | 2001 | 09 | 2003 |
| | | | | | | | |
| | | | | | | | |

| Applicant's last address outside the United States of more than one year. | | | | From | | To | |
|---|---|---|---|---|---|---|---|
| Street and Number | City | Province or State | Country | Month | Year | Month | Year |
| NONE | | | | | | | |

| Applicant's employment last five years. (If none, so state.) List present employment first. | | From | | To | |
|---|---|---|---|---|---|
| Full Name and Address of Employer | Occupation (Specify) | Month | Year | Month | Year |
| Sigma Builders, Inc. 14120 Parke Long Court. Ste. 201. Chantilly, VA 20151 | President | 10 | 2004 | Present Time | |
| Iraqi National Congress. 1006 Pennsylvania Ave. SE. Washington, DC 20003 | Deputy Director | 12 | 2000 | 06 | 2004 |
| | | | | | |
| | | | | | |
| | | | | | |

| Show below last occupation abroad if not shown above. (Include all information requested above.) | | | | | |
|---|---|---|---|---|---|
| Pierce Company Erbil, Ainkawa. Iraq. | Owner, Engineer | 08 | 1994 | 08 | 1996 |

| This form is submitted in connection with an application for: | Signature of Applicant | Date |
|---|---|---|
| ☐ Naturalization  ☐ Other (Specify): _____  ☒ Status as Permanent Resident | *[signature]* | 12/28/2007 |

| **Submit all copies of this form.** | If your native alphabet is in other than Roman letters, write your name in your native alphabet below: |
|---|---|

**Penalties:** Severe penalties are provided by law for knowingly and willfully falsifying or concealing a material fact.

## Applicant: Be sure to put your name and Alien Registration Number in the box outlined by heavy border below.

| Complete This Box  (Family Name) | (Given Name) | (Middle Name) | (Alien Registration Number) |
|---|---|---|---|
| DIZAYEE | HOGER | AHMED | A 076852336 |

OMB No. 1615-0008; Exp. 05/31/09

Department of Homeland Security
U.S. Citizenship and Immigration Services

# G-325A, Biographic Information

| (Family Name) DIZAYEE | (First Name) HOGER | (Middle Name) AHMED | ☒ Male ☐ Female | Birth Date (mm/dd/yyyy) 1962 | Citizenship/Nationality IRAQI | File Number A 076852336 |
|---|---|---|---|---|---|---|

| All Other Names Used (Including names by previous marriages) NONE | City and Country of Birth ERBIL, IRAQ | U.S. Social Security # (If any) |
|---|---|---|

| | Family Name | First Name | Date, City and Country of Birth (If known) | City and Country of Residence |
|---|---|---|---|---|
| Father | DEZAYEE | AHMED | 1932  IRAQ | MANASSAS, VA. USA |
| Mother (Maiden Name) | DEZAYEE | GALADIZH | 1939  IRAQ | MANASSAS, VA. USA |

| Husband or Wife (If none, so state.) Family Name (For wife, give maiden name) DIZAYEE | First Name IBRAHIM HATAW | Birth Date (mm/dd/yyyy) 1962 | City and Country of Birth ERBIL, IRAQ | Date of Marriage 09/21/1993 | Place of Marriage IRAQ |
|---|---|---|---|---|---|

| Former Husbands or Wives (If none, so state) Family Name (For wife, give maiden name) NONE | First Name NONE | Birth Date (mm/dd/yyyy) | Date and Place of Marriage | Date and Place of Termination of Marriage |
|---|---|---|---|---|

**Applicant's residence last five years. List present address first.**

| Street and Number | City | Province or State | Country | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|---|---|
| 7233 BLADEN PLACE | GAINESVILE | VIRGINIA | USA | 10 | 2006 | Present Time | |
| 12184 DRUM SALUTE PLACE | BRISTOW | VIRGINIA | USA | 10 | 2003 | 09 | 2006 |
| 9573 NITTANY DRIVE. APT. # 204 | MANASSAS | VIRGINIA | USA | 12 | 2001 | 09 | 2003 |

**Applicant's last address outside the United States of more than one year.**

| Street and Number | City | Province or State | Country | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|---|---|
| NONE | | | | | | | |

**Applicant's employment last five years. (If none, so state.) List present employment first.**

| Full Name and Address of Employer | Occupation (Specify) | From Month | From Year | To Month | To Year |
|---|---|---|---|---|---|
| Sigma Builders, Inc. 14120 Parke Long Court. Ste. 201. Chantilly, VA 20151 | President | 10 | 2004 | Present Time | |
| Iraqi National Congress. 1006 Pennsylvania Ave. SE. Washington, DC 20003 | Deputy Director | 12 | 2000 | 06 | 2004 |

**Show below last occupation abroad if not shown above. (Include all information requested above.)**

| Pierce Company Erbil, Ainkawa. Iraq. | Owner, Engineer | 08 | 1994 | 08 | 1996 |
|---|---|---|---|---|---|

| This form is submitted in connection with an application for: ☐ Naturalization  ☐ Other (Specify): ☒ Status as Permanent Resident | Signature of Applicant | Date 12/28/2007 |
|---|---|---|

| Submit all copies of this form. | If your native alphabet is in other than Roman letters, write your name in your native alphabet below: |
|---|---|

**Penalties:** Severe penalties are provided by law for knowingly and willfully falsifying or concealing a material fact.

## Applicant: Be sure to put your name and Alien Registration Number in the box outlined by heavy border below.

| Complete This Box (Family Name) DIZAYEE | (Given Name) HOGER | (Middle Name) AHMED | (Alien Registration Number) A 076852336 |
|---|---|---|---|

UNITED STATES OF AMERICA
DEPARTMENT OF STATE

REFUGEE TRAVEL
DOCUMENT

**Refugee Travel Document**



| | | |
|---|---|---|
| Type/Catégorie **TP** | Country/Pays **IRAQ** | File Number/ Numéro de Dossier **A76852336** |
| Entries/Entrées **M** | Book #/Registre **900537568** | |
| Surname/Nom **DIZAYEE** | | |
| Given Names/Prénoms **HOGER** | Middle Name/Deuxième Prénom **A** | |
| Date of Birth/Date de Naissance **62** | **CLASS: REFUGEE** | |
| Date of Issue/ Date du Délivrance **25 SEP/SEPT 03** | Date of Expiration/ Date d'Expiration **25 SEP/SEPT 04** | |
| Restrictions/Restrictions **NONE** | | |

**Document de Voyage de Réfugié**

```
TPUSADIZAYEE<<HOGER<A<<<<<<<<<<<<<<<<<<<<<<<<<
76852336<8IRQ6208266<0409256LINO323853596<26
```

THIS PAGE IS FOR USE BY
UNITED STATES IMMIGRATION OFFICER

THIS PAGE IS FOR USE BY
UNITED STATES IMMIGRATION OFFICER

VISAS



## VISAS

TÜRKİYE CUMHURİYETİ
GİRİŞ VİZESİ / ENTRY VISA
TRANSİT VİZESİ / TRANSIT VISA

| | |
|---|---|
| Adı Soyadı<br>Name/Surname | Hoger A Dizayee |
| Pasaportta<br>Passaport No | A76852336 |
| Geçerlilik Süresi<br>Validity | 90 Gün / 90 Days/Çift Transit/Double Transit |
| İkamet Süresi<br>Duration of Stay | 15 GÜN / 15 DAYS/DOUBLE TRANSIT |
| Amaç<br>Purpose | Transit / Transit |
| Tarih-Yılı<br>Date of Issue/Year | 06.10.2003/6234 |
| İrmç / Harçları<br>Fee / Collect | 100,- ABD Doları |

The name of the holder of the document
must be repeated in each visa.

VISAS

The name of the holder of the document
must be repeated in each visa.

VISAS



TÜRKİYE CUMHURİYETİ
GİRİŞ VİZESİ / ENTRY VISA
TRANSİT VİZESİ / TRANSIT VISA

The name of the holder of the document
must be repeated in each visa.



The name of the holder of the document
must be repeated in each visa.

VISAS

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY

This is *NOT* a United States Passport

*This Travel Document does not prejudice your residence for naturalization purposes, or in any to the provision of section 223 of the Immigration and Nationality Act. This document is issued to the person named herein, during he or she be outside of the United States. Its return is not required. See important information on pages 22, 23, 24, 25 and on the inside of the back cover.*

*If this document is found, please return to:*
U.S. Department of Homeland Security
Nebraska Service Center
850 S St.
Lincoln, Nebraska 68508

*THE HOLDER OF THIS DOCUMENT, UNLESS THE SUBJECT OF THE UNITED STATES AND SHALL IN NO WAY OF ANY OTHER PERSONAL STATUS, NOR ...*

*UNITED STATES OF AMERICA*                    *Bureau of Citizenship*
*Department of Homeland Security*              *and Immigration Services*

Refugee Travel Document
Form I-571 (Rev. 9-2-03)



| | | |
|---|---|---|
| Type/Catégorie **TP** | Country/Pays **IRAQ** | File Number/ Numéro de Dossier **A076852336** |
| Birth/Né/Born **M** | Book#/Registre **200295324** | |
| Surname/Nom **DIZAYEE** | | |
| Given Names/Prénoms **HOGER** | | Middle Name/Deuxième Prénom **A** |
| Date of Birth/Date de Naissance **1962** | Gender **M** | Class **REFUGEE** |
| Date of Issue/Date de Délivrance **16 MAR/MARS 2005** | | Date of Expiration/Date d'Expiration **15 MAR/MARS 2006** |
| Document de Voyage de Réfugié | Restrictions/Restrictions **NONE** | |

```
TPUSADIZAYEE<<HOGER<A<<<<<<<<<<<<<<<<<<<<<<<
2002953241IRQ6208266M0603157LIN0511650512<08
```





THIS PAGE IS FOR USE BY IMMIGRATION OFFICER

THIS PAGE IS FOR USE BY IMMIGRATION OFFICER









VISAS



VISAS



VISAS

VISAS

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY

This IS NOT a United States Passport

If this document is found, please return our
U.S. Citizenship and Immigration Services

UNITED STATES OF AMERICA
Department of Homeland Security

U.S. Citizenship
and Immigration Services

Refugee Travel Document
Form I-571 (Rev. 03/24/06)Y



| | | |
|---|---|---|
| Type/Categorie | Country/Pays | File Number/ Numéro de Dossier |
| TP | IRAQ | A076852336 |
| Entries/Entrées | Book #/N° de Livret | |
| M | 300012042 | |
| Surname/Nom | | |
| DIZAYEE | | |
| Given Name/Prénom | | Middle Name/Deuxième Prénom |
| HOGER | | A |
| Date of Birth/Date de Naissance | Gender/Sexe | Class/Catégorie |
| 1962 | M | ASYLEE |
| Date of Issue/Date de Délivrance | | Date of Expiration/Date d'Expiration |
| 02 MAY/MAI 2006 | | 02 MAY/MAI 2007 |
| Restrictions/Restrictions | | |
| NONE | | |

Titre de voyage pour réfugié

```
TPUSADIZAYEE<<HOGER<A<<<<<<<<<<<<<<<<<<<<<<<<
3000120420IRQ6208266M0705028LIN0615150255<28
```



THIS PAGE IS FOR USE BY
IMMIGRATION OFFICER

THIS PAGE IS FOR USE BY
IMMIGRATION OFFICER



THIS PAGE IS FOR USE BY
IMMIGRATION OFFICER

THIS PAGE IS FOR USE BY
IMMIGRATION OFFICER



## Important Information for Holders of Travel Document

A. Validity Period

B. Refugee Travel Document

## Purpose of Travel Document

3 0 0 0 1 2 0 4 2

Admission Number

434030544-10

Immigration and
Naturalization Service

I-94
Departure Record

Family Name

First (Given) Name

Country of Citizenship

Birth Date (Day/Mo/Yr)

See Other Side                                          STAPLE HERE

334421010  10



See Other Side                                    STAPLE HERE

Departure Number

# 987493055 09 ADMITTED AS A RESIDENT FOR

Immigration and
Naturalization Service

**I-94**
**Departure Record**

WAS 2033    19 MAY 04

PORT          DATE

4. Family Name

DIZAYEE

5. First (Given) Name          6. Birth Date (Day, Mo, Yr)

HOGER                          26 01 86 2

7. Country of Citizenship

IRAG

**See Other Side**        ENGLISH        **STAPLE HERE**

---

*Warning* - A nonimmigrant who accepts unauthorized employment is subject to deportation.

*Important* - Retain this permit in your possession; *you must surrender it when you leave the U.S.* Failure to do so may delay your entry into the U.S. in the future.

You are authorized to stay in the U.S. only until the date written on this form. To remain past this date, without permission from immigration authorities, is a violation of the law.

Surrender this permit when you leave the U.S.:
 - By sea or air, to the transportation line;
 - Across the Canadian border, to a Canadian Official;
 - Across the Mexican border, to a U.S. Official.

Students planning to reenter the U.S. within 30 days to return to the same school, see "Arrival-Departure" on page 2 of Form I-20 prior to surrendering this permit.

**Record of Changes**

A# 76 852 335

Port:                          Departure Record

Date:

Carrier:

Flight #/Ship Name:

PRINTED AND SOLD BY YANKEE SCHOONER INDUSTRIES CORPORATION
231 WEST 29TH STREET, NEW YORK, NY 10001-5209, U.S.A.
TEL: (212) 259-8200 • FAX (212) 239-8203

034616680 11

DIZAYEE
HOGER
IRAQ

Departure Number

1 2 8 9 4 0 4 2 9 / 11

Immigration and
Naturalization Service

I-94
Departure Record

Family Name
DIZHYEE

First (Given) Name
HOGER

Birth Date (Day, Mo, Yr)

Country of Citizenship

See Other Side

STAPLE HERE



394114665  12

I-94
Departure Record

DIZAYEE
HOGER
IRAQ

STAPLE HERE

350650585 11

Immigration and
Naturalization Service

I-94
Departure Record

DIZAYEE
HOGER
IRAQ

UNITED STATES
(Valid pursuant to
Section 2[?]
Will [?] INDEF
EMPLOYMENT
AUTHORIZED

62

STAPLE HERE

| Full Name | Hoger A. Dizayee |
|---|---|
| A Number | 076852336 |
| SSN | ▬▬▬ |
| Receipt Number | LIN 0313651051 |

**U. S. Department of Homeland Security**
**P. O. Box 82521**
**Lincoln, NE 68501-2521**
**U. S. Citizenship and Immigration Services**

Date: December 25, 2007

Re: Membership history and activities with the Iraqi National Congress (INC)

Dear Sir or Madam,

Since March 1993, I became a member of the Iraq National Congress, I believed very strongly in the INC's political platform because they promised "human rights and rule of law within a constitutional, democratic, and pluralistic Iraq"; preservation of Iraq's territorial integrity, and complete compliance with international law. I delivered these new ideas to people in Baghdad, Iraq who were isolated from the rest of the world and were living under the brutality of Saddam's regime.

Furthermore, I was an active member of the Iraq Trust, a charity organization affiliated with the Iraqi National Congress with cooperation of non-governmental organizations including United States Organizations to provide a humanitarian assistance and to rebuild the villages that were destroyed by Saddam's regime. Because of these activities mentioned above, I became a target of Saddam's regime and on December of 1996 the regime's owned television broadcasted computer images of me and a group of brave Iraqi officers and civilians whom were very close to me accusing us as an American agents, and I was listed as most wanted.

On October of 1996 the United States Government decided to evacuate the families of individuals who assisted the U. S. Government's efforts to bring a peace and prosperity to the Northern Iraq (Kurdistan), and fortunately my family was among them, they were evacuated to Guam and on February 7, 1997 they arrived to the United States. On August 25, 1998 I reunited with my family.

On December of 2000 and when I relocated my family from Louisville, KY to Northern Virginia I worked at the Iraqi National Congress, Office of Mobilization and Coordination. My position was Deputy Director. I was in charge of administering training programs that were offered by Department of Defense to provide training in different fields including human right conferences, computer training, English language courses, high management position courses, basic accounting courses, finance courses, security courses, and etc. to Iraqis who were reside in USA, Europe, Middle East, and Iraq.

The additional primary role, that I proudly want to mention, was to provide the Department of Defense with the Iraqi volunteers to serve as Iraqi Liberation Army to

station in Northern Iraq, under the sponsorship of the US Department of Defense. On December 17, 2002 they were selected to be given military training in Hungary with the U.S. Army's European Command, at Taszar Air Base, Hungary to provide the basis of a new Iraqi National Army. These bright Iraqis were embedded with the U. S. forces during the liberation of Iraq, serving as attaches to liaise with the Iraqi population.

Because there was an urgent need for a better coordination with the U. S. Department of Defense, I had to travel urgently on March 2003 to Northern Iraq which was at that time out of Saddam's control to meet on ground with officials from Dept. of Defense to organize our efforts prior to the start of the Operation Iraqi Freedom. After the liberation of Iraq and on May of 2003 I moved to Baghdad and worked as liaison officer to coordinate directly with the Dept. of Defense Intelligence Agency to identify the Iraq's 55 most wanted by the U. S. Government, and played a crucial role to assist units from 1st Armored Division to secure the neighborhoods in Baghdad and to provide them with actionable reports and intelligence information that saved the lives of the U. S. soldiers and Iraqi civilians. Please find with this letter three Letters of Recommendation from official from Dept. of Defense and from Col. Kenneth DeVan.

I would like to mention briefly my position as a Vice President of Business Development for our family owned Company Sigma International Construction, LLC a U. S. Company registered at the State of Virginia, our company played an outstanding role in Iraq reconstruction program by supporting the U. S. Army Corps of Engineering, Dept. of Defense Prime Contractors, completing projects inside U. S. Camps, Military Bases, and the Green Zone, providing U. S. Army with force protection products, and etc. to accomplish these duties I had to travel several times to Baghdad, Iraq during 2005 and 2006 to provide project management and supervision.

Currently, I am the President of Sigma Builders, Inc., located in Chantilly Virginia, employing five employees including three American Citizens. Additionally, I am a President of Erbil, LLC located in Louisville, KY, employing four employees. My companies businesses also benefits local suppliers, vendors, and sub-contractors. In addition to salaries paid to my employees, my construction projects will result in tax revenues and fees to the federal, state and local governments. Although my official status is "Asylee", I have never sought public assistance of any kind and, to the contrary, my family and I have always paid our own tax obligations and have contributed greatly to our local community. Once my status is changed to Permanent Resident, I will be able to expand my business, hire more full-time employees and contribute more tax revenue.

Kindly, be advised that if you need any further information or would like to verify the information provided in this letter, please notify me accordingly, I and my legal representative will be available immediately via email, telephone, official letter, or interview. I greatly appreciate any assistance that you can provide me in this matter. Please do not hesitate to contact me at any time at (703) 296-7364 (cell), (703) 378-3606 (office) or (703) 754-6510 (Home). You can also contact me by e-mail at ̲̲̲̲̲̲̲̲̲̲̲̲ , at my home address, or through my authorized legal advisor.

Please find below the exact Dates traveled outside the United States:

| Date left | Date returned | Countries visited | Purpose of the Trip |
|---|---|---|---|
| 03/20/2003 | 07/28/2003 | Iraq | Support the U. S. Army and DoD |
| 10/15/2003 | 05/19/2004 | Iraq, Turkey | Support the U. S. Army and DoD |
| 05/07/2005 | 06/07/2005 | Iraq, Turkey | Business related to Sigma International |
| 09/12/2005 | 11/04/2005 | Iraq, Turkey | Business related to Sigma International |
| 07/17/2006 | 08/23/2006 | Iraq, Turkey | Business related to Sigma International |

Thank you,

Yours sincerely,

Hoger A. Dizayee

7233 Bladen Place
Gainesville, Virginia 20155

**Information Collection Program (ICP)**
**Department Of Defense (DoD)**
**Hai Mansor-Baghdad, Iraq**

25 July 2003                                        20030725-1

TO Immigrations Officer, Air Port of Entry, United States Immigration Service, United States Of America.

Subject: Mr. Hoger Ahmad DIZAYEE, ████████ 9573 Nittany Drive, Apartment 204, Manassas, VA 20110.

Dear Sir or Ma'am

As a matter of Introduction, my name is Mr. John Laughlin Veley and I am a GS13 with the Department of Defense (DoD) and I manage an information collection program on behalf of the Office of the Secretary of Defense (OSD) in Baghdad, Iraq.

I am writing a letter of reference on behalf of my good friend and colleague, Mr. Hoger Ahmad DIZAYEE, currently of the Office of the Mobilization and Coordination (OMC) with the Iraqi National Congress (INC). I worked extremely closely with Mr. Hoger and his colleagues in Washington prior to the commencement of hostilities who provided critical and time sensitive information to the war fighters based on his personal expertise and that of his organization.   Since his deployment here to Iraq, the cooperation between our two offices locally has continued to expand  and his presence has greatly enhanced DOD's knowledge and understanding of Iraq.

Mr. Hoger is a man of unquestionable loyalty and principle; a keen sense of humor; and a demonstrable ability to operate flawlessly during times of high stress and great emotion.

Any assistance that you can provide Mr. Hoger would be well appreciated.

Please address any questions regarding Mr. Hoger Ahmad DIZAYEE to the undersigned at 01 914 360-4549 or 00 88 216 611 30 735 (THURAYAH)


With great respect



John Laughlin Veley
GS13- DoD
ICP-Baghdad

The new position and address for Colonel Kenneth DeVan:

Colonel Kenneth DeVan
Deputy Director of the School of Advanced Military Studies
Fort Leavenworth, KS. USA

Home address:

604 Lowe Drive
Fort Leavenworth, KS 66027

Telephone: (913) 364-4999

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 1ST ARMORED DIVISION-IRAQ
UNIT 24309
APO AE 09324

17 May 2004

AETV-THZ

SUBJECT:  Hoger A. Dizayee Support to 1st Armored Division

1.  This memorandum is designed to document the excellent support we have received from Hoger A. Dizayee, SSN 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, as he served in the capacity of Senior Security Officer at the Iraqi National Congress (INC).  1st Armored Division has been working with Hoger since September of 2003.  In his position he has been responsible for providing intelligence reports to the 1st Armored Division.  On average, the INC provided around 50 reports per month that were actionable information.  These reports were not only used within the division Area of Operation (AO) but a significant number were also provided to every coalition division in Iraq.  On a regular basis, our division and other divisions would ask for additional information from INC sources or request to meet with INC sources.  A vast majority of these requests were handled directly by Hoger.  In late 2003 Hoger was instrumental in developing, building, and manning the Iraqi Military Intelligence Requirements (IMIR) group, which consisted of intelligence assets from the 5 largest political organizations in Iraq.  On a regular basis, the INC section of the IMIR has proven to be head and shoulders above the rest.

2.  Hoger was also instrumental in providing excellent early warning, reconnaissance and surveillance, and non-lethal direct action capabilities.  At least once a week, Hoger would call to give imminent threat warnings or time sensitive reporting we can immediately turn into actionable intelligence.  Hoger also provided excellent reconnaissance and surveillance capability, an ability that we cannot match in an urban environment.  His teams were collecting grids, acquiring information on individuals, or watching residences for us.  His efforts have been critical in our understanding of the Former Regime Elements (FRE) composition and disposition and key to 1st Armored Division's numerous successes.

3.  Hoger has also been instrumental in helping us to understand our battle space.  He has provided multiple subject matter experts which help our intelligence personnel and commanders better understand and in turn better interact with their environment.  These subject matter experts include fields such as Iranian influence, Ansar al Islam, Mohammed's Army, and the history of Baghdad.

4.  Hoger has provided incredible support to our division and always in a professional and reliable manner.  We were able to call him at any time, day or night, and request support which would be provided without question.  Hoger is a true patriot, not only for America but also for the country of Iraq.  He is and will continue to be a true force multiplier to anyone he works with now and in the future.

5.  Point of contact is CPT Luke Calhoun, G2X at DNVT 551-0324, MCI 914-360-7715.

KENNETH W. DEVAN
LTC, MI
ACofS, G2

DEPARTMENT OF THE ARMY
US Army Intelligence Center and Fort Huachuca
Fort Huachuca, AZ 85613-7000

ATZS-DCD                                                1 February 2006

SUBJECT: Hoger A. Dizayee

1. I have worked closely with Hoger Dizayee for over 13 months while assigned as the
1st Armored Division Senior Intelligence Officer while deployed in support of Operation
Iraqi Freedom from May 2003 thru July 2004. Following my redeployment I have kept
in contact with Mr Dizayee while he was both in Iraq and in the United States. In my
current position as Director of Combat Development at the United States Intelligence
Center and School, I have solicited advice from Mr Dizayee on numerous occasions and
he has been more than helpful.

2. Mr Dizayee has a true admiration for our service members and a respect for what the
United States has done to help the Iraqi people. He has demonstrated unquestionable
loyalty to our service men and women and never once questioned a request for help or
information. When asked to help provide Iraqi role players to support a Joint Readiness
Training Center rotation to help train units deploying to Iraq he provide points of contact
that was critical to being able to resource the requirement.

3. Mr Dizayee has displayed a high degree of integrity and responsibility for his actions.
I have the utmost respect for Hoger and strongly support his application for Green Card
and expediting the process. He has literally risked his life for our service members and
his actions have unequivocally saved countless lives. His actions have not been for
personnel gain or rewards but for a love of soldiers and the ideal of freedom and
democracy.

4. Point of contact is COL Kenneth W. DeVan, Director of Combat Development,
USAICS (520) 533-9505.

Kenneth W. DeVan
COL, MI
Director Combat Development

December 29, 2007

Memorandum for US Citizenship and Immigration Services

Reference: File Number LIN0313651051; DIZAYEE, Hoger A.; SSN██████████

To Whom it May Concern:

The purpose of this letter is to provide supporting evidence for the petition for Permanent Residency for Mr. Hoger A. Dizayee. I first became acquainted with Mr. Dizayee in an official capacity as a Representative of the US Government and have remained friends with him since leaving Government Service.

I was a GG-13 civilian with the Defense Intelligence Agency (DIA) from December 2002 until September 2004 and I was assigned as one of the two liaison officers to the Iraqi National Congress (INC). It was during this time that I was able to directly observe and report on Mr. Dizayee's activities to DIA, which then became a part of official US Government intelligence reports. In addition to collecting intelligence information from the INC, it was also my duty to prepare detailed biographical reports on the individual members for DIA's operational files.

It is my understanding from speaking not only with Mr. Dizayee, but with other associates of the INC, that his membership in that organization began in 1993. He was motivated to join the opposition to the regime of Saddam Hussein not only because of his personal convictions, but also because of the oppression and death that he personally witnessed. On at least one occasion he himself barely escaped execution at the hands of the Iraqi Mukhabarat. It was from these experiences that Mr. Dizayee devoted the majority of his adult life to the overthrow of Saddam Hussein.

I met Mr. Dizayee in December 2002 when I was assigned by DIA to the INC project. Much of our activities are still classified, but I can give a brief outline of our work and Mr. Dizayee's contribution to the US Government's preparation for the invasion of Iraq and his activities during and after the war.

Mr. Dizayee was the Deputy Director of a part of the INC which was called the Office of Mobilization and Coordination (OMC). In essence, this activity was hired by DIA to help collect information in Iraq before, during and after the war. They took direction not only from DIA, but also from other offices within the Executive Branch.

Prior to the war, Mr. Dizayee coordinated with other INC members located within Iraq, to respond to requests for information from DIA and other government activities. They had individuals located not only in Iraq, but also in surrounding countries who sought out and made available to us Iraqi refugees and defectors who wanted to help the US. They provided up-to-date order of battle information on locations and movements of Iraqi military units up until the time the war began. After the war began, the INC had individuals on the ground who were able to communicate order of battle and battle damage assessments, so that the US military could concentrate its efforts in the most effective way. It was Mr. Dizayee's job to coordinate all of this and he did it very effectively.

After the war and the occupation of Baghdad, the mission of the OMC changed because they were no longer needed to operate in a surreptitious way and could openly work in Iraq. Mr. Dizayee established a direct connection with the First Armored Division (1AD) and directly supported their military operations in Baghdad. One of the most notable things that Mr. Dizayee organized was a team of Iraqis which would reconnoiter targets for the 1AD. This team would confirm targets for 1AD raids, assess the area for threats that US soldiers might encounter and would also mark the target prior to the assault on the target. This particular activity was noted on several occasions by the Commander of 1AD for saving US soldiers lives.

Once in Baghdad, the OMC also directly supported the Iraq Survey Group in it's search for weapons of mass destruction (WMD). Mr. Dizayee and the OMC organized investigators and surveillance teams which located and made available to debriefers high value members of the Saddam Hussein Regime and scientists who were directly involved in WMD programs. I was the direct liaison between the OMC and ISG and it was common knowledge at that time that the majority of the information that was acquired was because of the efforts of Mr. Dizayee and the OMC/INC. On one occasion, the OMC found the accountant of Uday Hussein and was able to recover more then $250 million dollars in former regime funds for the Iraqi government. Following the capture of Saddam Hussein the OMC was tasked with finding seven of Saddam's leaders who were identified from a document which he had in his possession. Within 48 hours, the OMC, under Mr. Dizayee's direction, had found and detained four of these individuals. As an American, I am proud that individuals like Mr. Dizayee desire residency and citizenship in my country.

I currently reside in Northern Iraq, so if you need further information, or want to confirm any parts of this letter, you may telephone me at (964) 750-445-6127 or (964) 790-192-0299. You may also contact me by e-mail at harryecovert@hotmail.com.

Sincerely,

Harry E. Covert



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Domestic Operations of Directorate*
Washington, DC 20529

**U.S. Citizenship
and Immigration
Services**

**FEB 4 - 2008**

HQ 70/23 & 70/28.1

# Interoffice Memorandum

**TO:**        Field Leadership

**FROM:**    Michael Aytes
Associate Director, Domestic Operations

**SUBJECT:**    Revised National Security Adjudication and Reporting Requirements

**Background**

U.S. Citizenship and Immigration Services (USCIS) conducts background checks on all applicants, petitioners, and beneficiaries seeking immigration benefits. This is done both to enhance national security and to ensure the integrity of the immigration process. USCIS has previously mandated that FBI name checks be completed and resolved before any positive adjudication can proceed on certain form types. This memorandum modifies existing guidance for applications where statutory immigration provisions allow for the detention and removal of an alien who is the subject of actionable information that is received from the FBI or other law enforcement agencies after approval of the application.

USCIS is issuing revised guidance in response to recommendations of the DHS Office of Inspector General (OIG-06-06) regarding the need to align the agency's background and security check policies with those of U.S. Immigration and Customs Enforcement (ICE). The *Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals* regulations prevent immigration judges and the Board of Immigration Appeals (BIA) from granting benefits to aliens before DHS confirms that all background and security checks have been completed. *See* 8 C.F.R. § 1003.47(g); 8 C.F.R. § 1003.1(d)(6)(i). In the context of removal proceedings, ICE has determined that FBI fingerprint checks and Interagency Border Inspection Services (IBIS) checks are the required security checks for purposes of the applicable regulations. In the unlikely event that FBI name checks reveal actionable information after the immigration judge grants an alien permanent resident status, DHS may detain and initiate removal proceedings against the permanent resident. *See* 8 U.S.C. § 1227; *see also* 8 U.S.C. § 1256 (allowing DHS to rescind an alien's adjustment of status).



**PLAINTIFF'S
EXHIBIT**
16
tabbies®

**Revised National Security Adjudication and Reporting Requirements**
Page 2

**Revised Guidance**

A definitive FBI fingerprint check and the IBIS check must be obtained and resolved before an Application for Adjustment of Status (I-485), Application for Waiver of Ground of Inadmissibility (I-601), Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act (I-687), or Application to Adjust Status from Temporary to Permanent Resident (Under Section 245A of Public Law 99-603) (I-698) is approved. USCIS will continue to initiate FBI name checks when those applications are received. Where the application is otherwise approvable and the FBI name check request has been pending for more than 180 days, the adjudicator shall approve the I-485, I-601, I-687, or I-698 and proceed with card issuance. The FBI has committed to providing FBI name check results within this timeframe.

There is no change in the requirement that FBI fingerprint check, IBIS check and FBI name check results be obtained and resolved prior to the adjudication of an Application for Naturalization (N-400).

Pending further guidance regarding post-audit reporting and tracking requirements and modifications to associated quality assurance procedures, applications approved pursuant to this memorandum shall be held at the adjudicating office. If derogatory or adverse information is received from the FBI after the application is approved, USCIS will determine if rescission or removal proceedings are appropriate and warranted.

Subject to the reporting requirements set forth in the February 16, 2007, memorandum titled "FBI Name Checks Policy and Process Clarification for Domestic Operations," an application or petition may be denied, dismissed, administratively closed, withdrawn, or referred to the Immigration Court at any time.

Questions regarding this memorandum should be directed through appropriate supervisory and operational channels. Local offices should work through their chain of command.

Distribution List:
Regional Directors
Service Center Directors
District Directors (except foreign)
Field Officer Directors (except foreign)
National Benefits Center Director