# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOGER A. DIZAYEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 1:07CV2053(HHK) |
| | ) |
| MICHAEL CHERTOFF, Secretary, United States Department of Homeland Security, et al., | ) |
| | ) |
| Defendants. | ) |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Federal district courts lack jurisdiction to review mandamus or Administrative Procedure Act ("APA") "unreasonably delay" complaints which contend that United States Citizenship and Immigration Services ("USCIS's") has taken too long to complete its review of an alien's application for permanent residency status. The contrary precedent on which Plaintiff relies reflects the minority view among the judges in this District who have reviewed that jurisdictional issue, and is not binding upon this Court. District Judges Bates, Leon, and numerous judges in other districts have dismissed similar complaints for lack of jurisdiction, reasoning that Congress has not authorized federal district courts to intervene in the adjudicative process and determine how much time USCIS should devote to assessing whether it should exercise its discretion to grant an alien permanent residency. See Orlov v. Howard, 523 F. Supp. 2d 30 (D.D.C. 2007); Luo v. Keisler, 521 F. Supp. 2d 72 (D.D.C. 2007); Wang v. Chertoff, 2007 WL 4139475, at *5 (N.D. Ga. Oct. 30, 2007) (noting that its holding was in line with the majority of district courts).

Many of Plaintiff's arguments concern a hypothetical situation in which USCIS refuses to process an adjustment of status application, or to take any action in connection with that

application. However, this plainly is not such a case. Instead, USCIS is processing Plaintiff's application, and is assessing whether his membership in and support of the Iraqi National Congress meet the definition of "terrorist activities" which would render him inadmissible. Therefore, this is a case in which the pace of USCIS's review of the application is inextricably intertwined with its substantive assessment of Plaintiff's eligibility for adjustment of status. Even Plaintiff cannot dispute that USCIS has plenary discretion to grant or deny the application, and that its final ruling on the application cannot be reviewed in federal courts. That discretion necessarily extends to USCIS's determination that it needs more time to complete its review of the eligibility issues present in this case. The discretionary nature of that assessment, and of the adjudicative process as a whole, forecloses judicial review under the Immigration and Nationality Act, the APA, and the Mandamus Act.

## ARGUMENT

**I.   SECTION 1252(A) OF THE IMMIGRATION AND NATIONALITY ACT FORBIDS REVIEW OF PLAINTIFF'S CLAIMS.**

As numerous district courts have recognized, Section 1252(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a), deprives courts of jurisdiction over challenges to the I-485 adjudication process. See, e.g., Orlov, 523 F. Supp. 2d at 33-37; Luo, 521 F. Supp. 2d at 73-74 (granting motion to dismiss action to compel adjudication of plaintiffs' I-485s and citing cases from other districts reaching same conclusion); Sun v. Gonzales, No. 07-504, Order (D.D.C. Dec. 10, 2007) (Exh. 2 to MTD[1]); Grinberg v. Swacina, 478 F. Supp. 2d 1350 (S.D. Fla. 2007); Wang, 2007 WL 4139475, at *5 (dismissing for lack of jurisdiction and citing cases from other districts reaching the same conclusion); Safadi v. Howard, 466 F. Supp. 2d 696 (E.D.V.A. 2006); MTD at 8-12 (analyzing statutory language and citing cases from other districts). Section

---

[1] Defendants' Motion to Dismiss is referred to as "MTD" throughout this brief.

1159(b) of the INA provides that the Secretary of Homeland Security or the Attorney General in their "discretion and under such regulations as [they] may prescribe *may* adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum." 8 U.S.C. § 1159(b) (emphasis added). Section 1252(a) expressly withdraws judicial review of all discretionary USCIS actions or decisions concerning adjustment applications and other immigration matters. 8 U.S.C. § 1252(a)(2)(B)(ii). Plaintiff seeks judicial review of USCIS's determination that the eligibility issues arising from his membership in the Iraqi National Congress require further review, and asks the Court to issue an order forcing Defendants to conclude their review of those issues and complete the adjudication. See Compl. ¶ 53. It follows that section 1252(a)'s proscription against judicial review of any discretionary "act" or "decision" forecloses review of Plaintiff's claims.

Plaintiff advocates an exceedingly narrow interpretation of Section 1252(a)(2)(B), and contends that this case does not involve a matter within USCIS's discretion. Plaintiff also ignores the evidence that USCIS is actively adjudicating his application, and suggests that this case involves a refusal to adjudicate or process the application. Finally, Plaintiff argues that the Court should apply a presumption in favor of judicial review. Those arguments lack merit.

### A. Plaintiff's Arguments Rest on an Incorrect Interpretation of Section 1252(a)(2)(B).

#### 1. Congress Has Imposed No Limits on USCIS's Ability To Thoroughly Investigate an Alien's Admissibility and Eligibility for Permanent Resident Status.

Plaintiff places undue emphasis on the phrase "specified. . . to be in the discretion of the Attorney General," 8 U.S.C. § 1252(a)(2)(B)(ii), and contends that Section 1252(a)(ii) is inapplicable because the text of Section 1159 "does not specifically confer . . . the discretion to indefinitely delay the adjudication of an application for adjustment of status." Opp. at 5-6.

3

However, the D.C. Circuit has declined to read Section 1252(a)(2)(B)(ii) so narrowly. See Zhu v. Gonzales, 411 F.3d 292, 294-95 (D.C. Cir. 2005) (rejecting argument that 1252(a)(2)(B)(ii) applies only to decisions which Congress has explicitly stated are matters of "discretion"). Section 1159 is worded broadly, and provides that adjustments of status are available to asylees in the Secretary of Homeland Security's and the Attorney General's "discretion and under such regulations as the Secretary or Attorney General may prescribe." 8 U.S.C. § 1159(b). The explicit reference to "discretion" and use of the word "may" confirm Congress's intent to grant plenary authority to the Attorney General over adjustment applications.[2] See Zhu, 411 F.3d at 295-96 (discussing import of "may" and "discretion" when assessing scope of discretion granted by a statutory provision); Mahaveer, Inc. v. Bushey, 2006 WL 1716723, at *3 (D.D.C. June 19, 2006). When a statute confers such broad discretion, the relevant question is whether there is language withdrawing and/or expressly limiting that discretion — not whether there is additional language specifically articulating each type of decision encompassed within that grant of discretion. See Zhu, 411 F.3d at 296 (noting that plaintiffs could point to no language indicating that decision being challenged had been withdrawn from the Attorney General's discretion).

Thus, under Zhu, the presumption is that DHS and USCIS have discretion over all aspects of the adjustment of status process unless the text of Section 1252(a)(2)(B)(ii) specifically constrains that discretion.[3] As explained supra, legislative silence would support a ruling that the Court lacks jurisdiction, not that jurisdiction is present. Nothing in Section 1252(a)(2)(B)(ii) purports to dictate the pace at which USCIS conducts its adjudications. Nor

---

[2] The Attorney General delegated that authority to USCIS, a component of the Department of Homeland Security.

[3] Although district judges in other jurisdictions have interpreted Section 1252(a)(2)(B)(ii) differently, see Opp. at 5-6, Zhu is the law of this Circuit and precludes reliance on those decisions.

4

does the statute limit USCIS's ability to devote time to thoroughly examine issues affecting an alien's eligibility, such as the eligibility concerns which arise from Plaintiff's membership in the Iraqi National Congress. In sum, "Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS." Sun, Order at 3 (Exh. 2 to MTD); see Orlov, 523 F. Supp. 2d at 35; Luo, 521 F. Supp. 2d at 74.

### 2. USCIS's Ongoing review of Plaintiff's Admissibility and the Remainder of the Adjudicative Process Constitute Agency "Action."

Plaintiff also argues that there has been no "decision" or "action" in this case, and that Section 1252(a)(2)(B)(ii) — which bars judicial review of any discretionary "action" or "decision" — is therefore inapplicable. Opp. at 4-5. That argument is founded upon an unduly narrow definition of the word "action," which is inconsistent with the term's ordinary meaning and its usage in the APA. It also fails to account for the fact that USCIS has been, and still is, actively reviewing Plaintiff's application.

The D.C. Circuit has endorsed reference to the ordinary usage of a word as a starting point for interpreting statutory language, and has held that courts may presume that Congress intended the common usage to apply. See Inner City Broad. Corp. v. Sanders, 733 F.2d 154, 158 (D.C. Cir. 1984). The "plain meaning of the word action . . . [is] 'an act or series of acts.'" Orlov, 523 F. Supp. 2d at 35 (quoting Safadi, 566 F. Supp. 2d at 699 (quoting Black's Law Dictionary)). The Administrative Procedure Act is even broader, and includes "failure to act" as part of the definition of "agency action." 5 U.S.C. § 551(13); Orlov, 523 F. Supp. 2d at 37 (noting same). Thus, given the absence of any language or legislative history to the contrary, Section 1252(a)(ii)'s reference to discretionary "action" should be read as encompassing the full adjudicative process. It follows that the portions of the process in which USCIS is actively reviewing eligibility issues constitute agency "action" to the same extent as other portions of the

5

process.  See Orlov, 523 F. Supp. 2d at 35-36 (concluding that agency action included USCIS's decision to wait for results of background checks prior to completing adjudication); Li v. Chertoff, 482 F. Supp. 2d 1172, 1178 (S.D. Cal. 2007) (concluding that "as long as USCIS is making reasonable efforts to complete the adjudication, the pace required to complete that process is committed to USCIS's discretion); Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (finding initiation of background checks was action).

Some of the cases on which Plaintiff relies conclude that only the final ruling on an application constitutes agency "action."  That narrow reading of the term "action" would render portions of section 1252(a)(ii) superfluous.  See Luo, 521 F. Supp. 2d at 73-74; Orlov, 523 F. Supp. 2d at 36; Safadi, 466 F. Supp. 2d at 699.  Plaintiff does not appear to dispute that the final ruling would be a "decision."  See Opp. at 3-4.  If those final rulings were the only "actions" that are insulated from review, there would be no need to include the term "action" in section 1252(a)(2)(B)(ii) in addition to the term "decision."  See Orlov, 523 F. Supp. 2d at 36.

Moreover, Plaintiff's allegation that there has been no action on the case, Opp. at 14, is factually incorrect.  The Director of the Nebraska Service Center has explained the status of the adjudication in his sworn affidavit, which is entitled to a presumption of good faith and has not been rebutted by Plaintiff.  See Calton v. Babbitt, 147 F. Supp. 2d 4, 8 (D.D.C. 2001) (agency testimony afforded a presumption of good faith).  USCIS submitted fingerprint checks to the FBI on August 15, 2003 and February 15, 2007.  See Heinauer Decl. ¶ 8.  USCIS electronically submitted a name check request to the FBI on March 27, 2003, and the FBI completed that name check on April 3, 2003.  See id. ¶ 10.  USCIS also has performed preliminary checks against the DHS-managed Interagency Border Inspection System (IBIS), which contains records and watch list information from over twenty federal law enforcement and intelligence agencies.  See id. ¶ 7.

USCIS issued a request for evidence December 4, 2007, requesting details of Plaintiff's history and activities with the Iraqi National Congress. See id. ¶ 13. USCIS received Plaintiff's response to that request for evidence on January 2, 2008, and is reviewing the information Plaintiff submitted. See id. Therefore, this is not a case in which Defendants have intentionally discarded or otherwise refused to review or process an application. The Court need not decide whether section 1252(a)(2)(B)(ii) would permit judicial review in those extreme circumstances in order to determine whether jurisdiction exists in this case.

> 3. **No USCIS Regulations Impose a Duty to Complete An Adjustment of Status Adjudication While Questions Regarding the Alien's Admissibility Remain Pending Or Within A Fixed Period of Time.**

Like the text of the INA, USCIS's regulations are silent regarding the pace at which USCIS should complete its adjudications of adjustment of status applications. The regulation cited in Plaintiff's opposition brief provides that USCIS shall notify an applicant of its final decision on an adjustment application at the conclusion of the adjudication, and notify the applicant of supporting reasons for the decision in the event of a denial. See 8 C.F.R. § 209.2(f). That regulation has not been triggered in this case because USCIS has not yet made a final decision on Plaintiff's application.

Even if Section 209.2(f) could be construed as implicitly requiring USCIS to take some action on an application once it has been filed, it would not require USCIS to alter the manner in which it is adjudicating Plaintiff's application. As explained *supra*, USCIS is actively reviewing Plaintiff's eligibility for adjustment of status, and attempting to determine whether he has engaged in terrorist activities. USCIS intends to issue a decision once those issues have been resolved. See Heinauer Decl. ¶ 15 (noting that USCIS is processing the application consistent with standard procedures). That satisfies any obligation USCIS may have to process adjustment

7

of status applications. See Li, 482 F. Supp. 2d at 1178. To the extent the adjudication is taking longer than Plaintiff may desire, that is attributable to the amount of time necessary to thoroughly review those eligibility issues, and not from a refusal to process or adjudicate the application.[4]

### B. No Presumption of Judicial Review Attaches to this Case.

Plaintiff's suggestion that this Court should apply a presumption in favor of judicial review in this case, Opp. at 7-8, conflicts with D.C. Circuit precedent. The D.C. Circuit has recognized that "[w]hen it comes to matters touching on national security or foreign affairs . . . the presumption of review runs aground." Bruno v. Albright, 197 F.3d 1153, 1162 (D.C. Cir. 1999) (dismissing challenge to denial of visa for lack of jurisdiction). Although the Court made that statement in connection with a visa application, the same principles apply here.

This case clearly involves "matters touching on national security or foreign affairs." Bruno, 197 F.3d at 1162. Defendants are assessing whether Plaintiff has engaged in terrorist activities which would render him inadmissible as a permanent resident. See Heinauer Decl. ¶¶ 11, 13. That sensitive issue — which is still being investigated — is the type of foreign policy and national security matter that traditionally has been entrusted to the executive branch. See Bruno, 197 F.3d at 1160. The Supreme Court has long recognized that "'any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations . . . [and] are so exclusively entrusted to the political branches of government as to be largely immune from judicial interference.'" Id. at 1159 (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 588-89 (1952)); see generally Orlov, 523 F. Supp. 2d

---

[4] USCIS could not adjudicate Plaintiff's application between March 24, 2003 and May 2005 because of the annual cap on asylees. See Heinauer Decl. ¶¶ 4-5.

8

at 36 (acknowledging "the general rule that courts should refrain from interfering with matters of immigration and national security").

Plaintiff's reliance on I.N.S. v. St. Cyr, 533 U.S. 289, 298 (2001) is misplaced. In that case, the Supreme Court referenced the general presumption that administrative action is reviewable, but centered its analysis on the "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." Id.; see also id. at 299-308 (discussing constitutional and historical significance of the writ). Unlike St. Cyr, this case does not involve the writ of habeas corpus. Accordingly, even if the constitutional protections that preserve habeas review may in some cases trump the presumption against judicial review of national- security- related immigration matters, those protections are inapposite in this civil action.

## II. NEITHER THE MANDAMUS ACT NOR THE ADMINSITRATIVE PROCEDURE ACT PROVIDES SUBJECT MATTER JURISDICTION TO REVIEW PLAINTIFF'S CLAIMS.

As Plaintiff admits, there is no mandamus jurisdiction unless Defendants have a clear duty to act and Plaintiff establishes a "clear right to relief." In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005); see Opp. at 12. The Mandamus Act does not provide a remedy where, as here, the act that the plaintiff seeks to compel is discretionary. See Heckler v. Ringer, 466 U.S. 602, 616 (1984). Even when those criteria have been met, "a court may grant mandamus] relief only when it finds 'compelling equitable grounds.'" In re Medicare Reimbursement Litigation, 414 F.3d at 10.

Defendants have no "clear duty" to complete adjudication of Plaintiff's adjustment application while questions remain concerning his eligibility for the benefit. Nor do they have any clear duty to cut short their review and assessment of whether Plaintiff has been involved in

9

terrorist activities. Indeed, until it has been clearly established that Plaintiff has not engaged in such activities, he is statutorily ineligible for the benefit he seeks. See 8 U.S.C. § 1182(a)(3)(B)(i); id. § 1159(c) (prohibiting the waiver of that statutory eligibility requirement). Likewise, Plaintiff has no "clear right" to such relief. As explained supra, USCIS has discretion over the entire adjudication process, including the pace at which the adjudication is completed. Plaintiff bears the burden of persuading USCIS to exercise its discretion in his favor, and has no entitlement to permanent residency status. See Elkins v. Moreno, 435 U.S. 647, 667 (1978) (noting "adjustment of status is a matter of grace, not right"); Randall v. Meese, 854 F.2d 472, 474 (D.C. Cir. 1988). In sum, because the timing of the adjudication of Plaintiff's adjustment of status application is not "subject to positive command, plainly described and free from doubt," Plaintiff cannot invoke mandamus jurisdiction. Rahman v. McElroy, 884 F.Supp. 782, 787 (S.D.N.Y. 1995).

There is no APA jurisdiction for similar reasons.[5] Section 706(1), which permits review of complaints seeking to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), applies "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. So. Utah Wilderness Alliance, 542 U.S. 51, 64 (2004). Moreover, Congress expressly removed agency actions "committed to agency discretion by law" from the scope of the APA. 5 U.S.C. § 701(a)(2). This Circuit has

---

[5] Defendants seek dismissal pursuant to Rule 12(b)(1), because the Court lacks jurisdiction to review Plaintiff's allegation that the alleged delay in adjudicating Plaintiff's application has been unreasonable. Defendants have not sought dismissal for failure to state a claim, and therefore have not yet proffered a substantive analysis of the reasonableness of the alleged delay under the six-factor TRAC analysis. Plaintiff's apparent belief that Defendants' motion to dismiss includes substantive arguments regarding the application of TRAC to this case is mistaken, and Plaintiff's discussion of the TRAC factors goes beyond the scope of Defendants' motion. See Opp. at 9-11. Defendants will present their substantive analysis of the TRAC factors in a dispositive motion if the Court determines that it has jurisdiction to review that issue.

10

interpreted Section 701(a)(2) to mean that a "plenary" grant of discretion renders agency actions unreviewable under the APA.  Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151, 157 (D.C. Cir. 2006).  USCIS has "plenary" discretion to carefully review the eligibility issues which arise from Plaintiff's membership in the Iraqi National Congress because Congress has given it broad "discretion" over adjustment of status applications.  See Orlov, 523 F. Supp. 2d at 35-38.  That discretion precludes Plaintiff from asserting an APA claim.[6]  See id. at 37; see also, e.g., Safadi, 466 F.Supp.2d at 700; Zheng v. Reno, 166 F. Supp.2d 875, 878-79 (S.D.N.Y. 2001); Karan v. McElroy, 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003) ("[B]ecause decisions regarding the plaintiff's immigration status are committed to the discretion of the INS, this Court lacks the authority under . . . the APA to grant the relief the plaintiff seeks."); see also Rahman, 884 F.Supp. at 787-88.

Plaintiff's assertion that the APA itself gives USCIS a clear non-discretionary duty to act which is sufficient to trigger mandamus and APA jurisdiction is circular, and contrary to Norton v. Southern Utah Wilderness Alliance.  In Norton, the Supreme Court addressed, inter alia, the language in 5 U.S.C. §706(1), which provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed."  524 U.S. at 62.  The Court noted, with emphasis, that "the only agency action that can be compelled under the APA is action legally required."  524 U.S. at 63 (emphasis in original).  The Court reasoned that the APA simply extended the traditional practice, prior to its passage, of achieving judicial review through a writ of mandamus, and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command."  Id. (quoting ICC v. New York, N.H. & H.R. Co., 287 U.S.

---

[6] Section 701(a) of the APA, which "withdraws [an APA] cause of action" to the extent another statute "precludes judicial review," also prevents Plaintiff from raising an APA challenge.  Block v. Community Nutrition Inst., 467 U.S. 340, 345 (1984).

11

178, 204 (1932) and citing Kendall v. United States ex rel. Stokes, 12 Pet. 524, 613 (1838) ("precise, definite act . . . about which [an official] had no discretion whatsoever")); accord Vermont Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc., 435 U.S. 519, 546 (1978) (§706[1] empowers a court only to compel an agency "to perform a ministerial or non-discretionary act"). The Court added that "a delay cannot be unreasonable with respect to action that is not required." 524 U.S. at 63 n.1. In sum, the APA does not provide a remedy unless Plaintiff can point to some independent statute or regulation which gives USCIS a mandatory non-discretionary duty to complete the adjudication at this time. As explained *supra*, there is no such regulation or statute, and USCIS is not "legally required" to complete the adjudication while eligibility issues remain pending, or to cut short its review and assessment of those issues.

## III. THE CLAIMS AGAINST FBI DIRECTOR MUELLER ALSO SHOULD BE DISMISSED.

Plaintiff lacks standing to bring claims against the FBI, because the FBI has completed the name check conducted in connection with Plaintiff's application. See MTD at 19-20. Plaintiff's opposition does not address or rebut Defendants' standing argument. Therefore, Director Mueller should be dismissed from this action for the reasons set forth in Defendants' Motion to Dismiss.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' motion to dismiss, Defendants respectfully request that the Court GRANT Defendants' motion to dismiss and DISMISS the case for lack of jurisdiction.

Dated: March 31, 2008                                    Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, DC BAR # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, DC  20530
Phone: (202) 514-7198 Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

Elizabeth Posont
CIS NEBRASKA SERVICE CENTER COUNSEL